UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-30522
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TROY A. LAWRENCE,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Western District of Louisiana
_____

June 23, 1999

Before EMILIO M. GARZA, BENAVIDES, and DENNIS, Circuit Judges.

BENAVIDES, Circuit Judge:

Troy A. Lawrence appeals the district court's denial of his petition for a writ of habeas corpus and his motion for reconsideration of that denial. We affirm.

Pursuant to 28 U.S.C. § 2255, Lawrence moved the district court to vacate his conviction and sentence under 18 U.S.C. § 924(c)(1) for using and carrying a firearm during and in relation to a drug trafficking crime. Lawrence's co-defendant at trial, Sylvester Tolliver, filed essentially the same motion several months earlier. The government did not oppose Tolliver's motion, and the court granted it, vacating Tolliver's conviction and the corresponding sentence. Lawrence argues that the government's

opposition to and the district court's denial of his motion violates his right to equal protection under the Fifth Amendment and that the disparate treatment is fundamentally unfair. We disagree because we view the government's decision whether to oppose a motion to vacate as a matter within its discretion and because Lawrence has suggested no impermissible ground for the government's opposition to and the district court's denial of his motion.

I

Lawrence and Tolliver came to the attention of authorities when a law enforcement officer clocked their two vehicles traveling one behind the other at seventy-one miles per hour in a fifty-five-mile-per-hour zone. During the course of the ensuing stop, the officer asked Lawrence if he had any weapons in his car. Lawrence told the officer that he had a pistol on the front seat, and the officer then located the loaded weapon in the vehicle. Tolliver carried a firearm in his car, which also contained thirty-one kilogram-sized bricks of cocaine hidden in a secret compartment of the vehicle.

On January 24, 1992, a jury convicted Lawrence and Tolliver of conspiracy to possess with intent to distribute fifty grams of cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A); of possession, aided and abetted by each other, with intent to distribute approximately fifty grams of cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2; and of using and carrying a firearm during and in relation to a drug trafficking

crime in violation of 18 U.S.C. § 924(c)(1).  For the conspiracy and possession offenses, both Lawrence and Tolliver received concurrent sentences of imprisonment for 216 months.  They also received consecutive sixty-month terms of imprisonment for the § 924(c)(1) count.  In an unpublished opinion, this Court upheld the convictions.  *See United States v. Tolliver*, No. 93-4438 (5th Cir. Mar. 18, 1994).

Thereafter, in *Bailey v. United States*, 516 U.S. 137, 150, 116 S.Ct. 501, 509 (1995), the Supreme Court held that the "use" prong of § 924(c)(1) "denotes active employment." *Bailey* thereby invalidated the type of instruction--allowing for a passive conception of "use"--given during the trial of Lawrence and Tolliver.

On May 20, 1996, Tolliver filed a motion to dismiss the count charged under § 924(c)(1), which the district court construed as a motion pursuant to 28 U.S.C. § 2255.  The government did not oppose Tolliver's motion and conceded that his conviction under § 924(c)(1) should be vacated.  In taking this position, the government relied on *Bailey* and on *United States v. Fike*, 82 F.3d 1315, 1328 (5th Cir. 1996), *overruled by United States v. Brown*, 161 F.3d 256 (5th Cir. 1998) (en banc), which reversed a § 924(c)(1) conviction that involved a pre-*Bailey* passive "use" instruction.[1]  On July 8, 1996, the district court vacated

---

[1]The *Fike* panel found the evidence in that case to be sufficient to support a "carry" conviction, but not a "use" conviction.  Concerned that the jury might have based its verdict on the pre-*Bailey* "use" prong of the instructions, the panel remanded for retrial on the "carry" theory.  *See Fike*, 82 F.3d at

Tolliver's § 924(c)(1) conviction and the corresponding sixty-month sentence.

On November 26, 1996, Lawrence, with the assistance of counsel, filed a § 2255 motion to vacate his sentence, arguing that the government had not demonstrated "use" of a firearm as required under § 924(c)(1) according to *Bailey*. The government opposed this motion. In opposing Lawrence's § 2255 motion, the government relied on Fifth Circuit cases interpreting § 924(c)(1)'s "carry" prong where the firearm was found in a vehicle driven by the defendant and argued that the evidence demonstrated that Lawrence had carried a firearm during and in relation to a drug trafficking crime. The government acknowledged that *Fike*, 82 F.3d at 1328, had reversed a § 924(c)(1) conviction despite evidence showing "carrying," but the government attempted to distinguish *Fike* by relying on other circuits' case law. The government focused on cases in which various courts had upheld § 924(c)(1) convictions, despite erroneous "use" instructions, because the convictions were clearly based only on the "carry" prong of § 924(c)(1). According to the government, these cases offered a way to distinguish *Fike* and to preserve Lawrence's conviction. On February 12, 1997, the district court denied Lawrence's motion. The court noted that the indictment charged that Lawrence "used and carried" a firearm in violation of § 924(c)(1). Because the conjunctive nature of the charge meant that the government could succeed if it proved *either* "use" *or* "carrying," the jury received an instruction that it could

1328.

4

find Lawrence guilty if he "knowingly used or carried" a firearm. The district court observed that there was no evidence of mere possession such that the jury might have found the type of passive "use" rejected by *Bailey*. Because the record was clear that the jury could only have found that Lawrence had "carried" the firearm, the court concluded that the improper "use" instruction did not require it to vacate the § 924(c)(1) conviction.

Lawrence then filed a motion to reconsider, arguing that the Equal Protection Clause and fundamental fairness required that his motion be treated the same as the motion brought by his co-defendant. Lawrence also argued that the federal Sentencing Guidelines required that he and Tolliver be sentenced similarly. According to Lawrence, the grant of Tolliver's motion and the denial of Lawrence's motion were inconsistent, resulting in "an absurdity." The district court granted the motion to reconsider and addressed Lawrence's arguments but denied the motion to vacate, concluding that Lawrence lacked legal support for his claim that the disparate treatment violated equal protection principles. According to the district court, there was sufficient evidence to support a "carry" conviction for both defendants and the fact that Tolliver's motion was unopposed "was a fortuitous turn of events for Tolliver" but did not require the court to reach the same conclusion with respect to Lawrence's motion. Lawrence filed a timely notice of appeal, and this Court granted a certificate of appealability.

Soon after we heard arguments in this case, our Court, sitting

en banc, decided *United States v. Brown*, 161 F.3d 256, 259 (5th Cir. 1998) (en banc), which held that an improper "use" instruction is harmless if, in concluding that the defendant "used" a firearm according to a pre-*Bailey* "use" instruction, the jury necessarily found that he "carried" the firearm. Under *Brown*, we would affirm the district court's initial denial of Lawrence's § 2255 motion, as the record in this case reveals that "the jury's finding of passive 'use' amounted to a finding of 'carrying.'" *Id.*

On appeal, however, Lawrence does not challenge the substantive basis of the district court's denial of his motion to vacate. Instead, Lawrence argues, as he did in his motion for reconsideration, that the disparate treatment of his § 2255 motion, in relation to the same motion by his co-defendant, violates his right to equal protection. In support of his argument, Lawrence relies on the Fifth Amendment's equal protection component, the United States Sentencing Guidelines, the doctrine of the law of the case, and notions of "fundamental fairness." The government counters that the constitutional guarantee of equal protection does not require that similarly situated defendants be treated in the same way, as long as their sentences fall within the Sentencing Guidelines.

## II

In our criminal justice system, the decision whether to prosecute an individual is vested with the government. *See Wayte v. United States*, 470 U.S. 598, 607, 105 S. Ct. 1524, 1530 (1985); *United States v. Sparks*, 2 F.3d 564, 580 (5th Cir. 1993). That

6

decision "is within the United States Attorney's substantial discretion and is generally not subject to judicial review absent a showing of actual vindictiveness or an equal protection violation." *United States v. Ballard*, 779 F.2d 287, 295 (5th Cir. 1986) (footnotes omitted). The broad discretion afforded a prosecutor "rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review." *Wayte*, 470 U.S. at 607, 105 S. Ct. at 1530; *see United States v. Armstrong*, 517 U.S. 456, 465, 116 S. Ct. 1480, 1486 (1996). As a general rule, then, substantial deference is accorded decisions requiring the exercise of prosecutorial discretion. We view the decision whether to oppose a § 2255 motion as intrinsically related

to the decision whether to prosecute in the first instance or to a decision regarding the level of punishment to be sought in a prosecution. Because the government's response to a § 2255 motion is the product of its exercise of prosecutorial discretion, it ought to be afforded the same deference as other enforcement decisions.

In keeping with the need to avoid judicial second-guessing of prosecutorial decisions, we have never held that similarly situated defendants must be treated identically. We allow the government discretion to decide which individuals to prosecute, which offenses to charge, and what measure of punishment to seek. *Cf. United States v. Batchelder*, 442 U.S. 114, 124, 99 S. Ct. 2198, 2204 (1979) ("Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion."). Specifically, the Supreme Court has sanctioned prosecutors' decisions to seek the imposition of disparate sentences among individuals committing similar offenses. *See, e.g.*, *Williams v. Illinois*, 399 U.S. 235, 243, 90 S. Ct. 2018, 2023 (1970) ("The Constitution permits qualitative differences in meting out punishment and there is no requirement that two persons convicted of the same offense receive identical sentences."). In *United States v. LaBonte*, 520 U.S. 751, 117 S. Ct. 1673 (1997), the Court addressed the argument that a challenged statutory interpretation resulted in a sentencing guideline that allowed "unwarranted disparity" in sentences. The potential for disparate sentences arose from the government's discretionary power to

8

provide notice that it would seek enhanced penalties based on prior convictions. In response to the criticism of the challenged interpretation, the Court explained:

> Insofar as prosecutors, as a practical matter, may be able to determine whether a particular defendant will be subject to the enhanced statutory maximum, any such discretion would be similar to the discretion a prosecutor exercises when he decides what, if any, charges to bring against a criminal suspect. Such discretion is an integral feature of the criminal justice system, and is appropriate, so long as it is not based upon improper factors. Any disparity in the maximum statutory penalties between defendants who do and those who do not receive notice is a foreseeable--but hardly improper--consequence of the statutory notice requirement.

*Id.* at 762, 117 S. Ct. at 1679 (citations omitted).

This Court has similarly rejected equal protection challenges arising from disparate sentences imposed on co-defendants. In *Russell v. Collins*, 998 F.2d 1287 (5th Cir. 1993), for example, we addressed the claim that the disparity between the appellant's death sentence and the sixty-year sentence of his accomplice, who pleaded guilty, violated the Equal Protection Clause. In rejecting this argument, we noted:

> It is well established that a prosecutor has discretion to enter into plea bargains with some defendants and not with others. Absent a showing of vindictiveness or use of an arbitrary standard . . . the prosecutor's decision is not subject to constitutional scrutiny.

*Id.* at 1294 (footnote omitted); *see also United States v. Garcia*, 693 F.2d 412, 417 (5th Cir. 1982) ("A district judge enjoys broad discretion in imposing sentence; the sentence of a codefendant need not be considered."). In *United States v. Ryan*, 874 F.2d 1052 (5th Cir. 1989), we dealt with a claim that the district court's order

9

of restitution, imposed on the appellant but not on a number of other co-defendants, constituted an equal protection violation. We noted that the restitution ordered was less than the amount due to the government and was within the limits set by the statute dealing with restitution. We upheld the restitution order, reasoning:

> District courts are accorded broad discretion in ordering restitution. Generally, "once it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end.". . . The simple fact that like punishment was not imposed on other defendants does not offend the constitution. The court has complete discretion to consider the relative degrees of responsibility of co-defendants in imposing restitution obligations but this is not a necessary factor either as a constitutional or statutory requirement.

*Id.* at 1054-55 (citations omitted); *see also United States v. Boyd*, 885 F.2d 246, 249 (5th Cir. 1989) (holding that a defendant could not base a challenge to his sentence solely on fact that his co-defendant received a lesser sentence); *United States v. Castillo-Roman*, 774 F.2d 1280, 1284 (5th Cir. 1985) (noting that a judge need not consider the sentences of co-defendants in imposing sentence on a defendant and stating that a "defendant cannot rely upon his codefendants' sentences as a yard-stick for his own"); *United States v. Cortez*, 521 F.2d 1, 4 (5th Cir. 1975) (finding that the imposition of a lengthier sentence than that imposed on a co-defendant did not constitute an equal protection or due process violation where the sentence was within the statutory limit and the appellant had not demonstrated an abuse of judicial discretion that would have entitled him to relief).

Although these cases do not address the precise situation

10

here--that is, the government's taking contrary positions with respect to co-defendants' § 2255 motions involving identical facts and legal issues--their underlying rationale is indistinguishable from the principle that must guide this case. If the equal protection and due process guarantees do not divest the government of its discretionary authority to select which individuals it will prosecute, what charges it will bring, and what punishment it will seek, then the decision whether to oppose a § 2255 motion surely must rest with the government. Had the government in the first instance charged Lawrence but not Tolliver under 18 U.S.C. § 924(c)(1), absent a constitutionally impermissible motive, we would have rejected an equal protection challenge as too great an incursion into the government's prosecutorial authority. The imposition of a requirement of equal post-conviction treatment for similarly situated defendants would constitute no less an unwarranted intrusion into the decisionmaking authority necessarily reserved for the administrative branch.

This is not to say that the government may wield its prosecutorial power in an invidious or arbitrary manner. Although prosecutorial discretion is broad, it is not unbounded. *See Wayte*, 470 U.S. at 608, 105 S. Ct. at 1531. "In particular, the decision to prosecute may not be deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification, including the exercise of protected statutory and constitutional rights." *Id.* (internal quotes and citations omitted); *see Armstrong*, 517 U.S. at 464-65, 116 S. Ct. at 1486. We ascertain

11

whether a particular enforcement decision is impermissible by applying equal protection standards. *See Wayte*, 470 U.S. at 608, 105 S. Ct. at 1531. To succeed with a selective prosecution claim, a defendant must demonstrate that the enforcement had a discriminatory effect and was motivated by an invidious purpose. *See id.; Sparks*, 2 F.3d at 580; *United States v. Hoover*, 727 F.2d 387, 389 (5th Cir. 1984); *Johnson*, 577 F.2d at 1308.

In this case, the appellant has not claimed that the government's opposition to (or the court's denial of) his motion was motivated by any type of animus or by any characteristic unique to him. The only significant difference between appellant and his co-defendant is the point in time at which they each filed their respective § 2255 motions. According to Lawrence, this temporal difference is an insufficient basis for the disparate treatment.

Notwithstanding Lawrence's protestations, the government had a rational and proper basis for its decision to oppose a motion identical to one that it had earlier conceded. The state of the law regarding the "use" component of § 924(c)(1) was evolving during the period in which Tolliver and Lawrence filed their post-conviction motions. *See United States v. Brown*, 161 F.3d 256, 258 n.4 (5th Cir. 1998) (en banc) (reviewing circuit courts' development of harmless-error analysis for pre-*Bailey* convictions under § 924(c)(1)). Tolliver's § 2255 motion was apparently one of the first such motions filed in the Western District of Louisiana after the *Bailey* decision. After Tolliver's motion, a prevailing trend emerged, which dictated that a conviction involving an

12

improper "use" instruction coupled with a proper "carry" instruction should stand if the evidence demonstrated that a jury necessarily had to have found that the defendant "carried" a firearm in order to have found that he "used" one under the improper instruction. *See, e.g.*, *United States v. Robinson*, 96 F.3d 246, 250 (7th Cir. 1996); *United States v. Gonzalez*, 93 F.3d 311, 320-22 (7th Cir. 1996).

Lawrence complains that the government, in opposing his motion, relied on decisions from the Seventh Circuit in the absence of intervening Fifth Circuit case law. This is a baseless objection--one that essentially would place the government in a position in which it could not oppose any *Bailey*-based motions owing to the lack of favorable circuit precedent, the development of which would in turn be stymied by the government's consequent inability to press post-*Bailey* arguments. Lawrence cannot estop the government from changing its position as the evolving nature of the law encourages the government (as well as defendants) to seek new pronouncements from the courts. In fact, with respect to the substantive issue raised by Lawrence's § 2255 motion, we reconsidered the matter, reversed our initial position, and adopted a harmless-error analysis for convictions under improper "use" instructions. *See Brown*, 161 F.3d at 259 (finding a pre-*Bailey* "use" instruction to be harmless where "the jury's finding of passive 'use' amounted to a finding of 'carrying'").[2] Lawrence

---

[2]As we noted earlier, *Brown* thus dictates that Lawrence's conviction be upheld, notwithstanding the improper "use" instruction. The circumstances of his offense demonstrate that a

13

cannot turn back the clock to a time when the law was less developed simply because his co-defendant filed his motion earlier and consequently gained the benefit of the government's uncertainty regarding the viability of convictions involving pre-*Bailey* instructions.

In sum, there is nothing in the record to indicate that an impermissible purpose led the government to oppose Lawrence's motion. Instead, the government merely re-evaluated its position and advanced a different argument than the one to which it had acceded in Tolliver's case. Lawrence had no ground to preclude the government from doing so, as it is beyond peradventure that the decision to advance a theory not developed in earlier cases does not offend the constitution. Although it is little comfort for Lawrence that he will remain in prison five years longer than his equally culpable co-defendant, in this case, timing did mean all the difference.

III

Lawrence offers several addition arguments to support his equal protection claim. We address each in turn.

A

First, Lawrence argues that the doctrine of the law of the case dictates that his motion be treated in the same manner as the motion made by his codefendant.

---

jury's finding of "use" was the functional equivalent of "carry." *See Muscarello v. United States*, – U.S. –, 118 S. Ct. 1911 (1998) (holding that knowing possession and vehicular transport of a firearm constitute "carrying" under § 924(c)(1)).

> The doctrine of the law of the case "expresses the practice of courts generally to refuse to reopen what has been decided." The doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case. While not as inflexible as the rules of issue and claim preclusion, the law of the case doctrine nonetheless creates a strong presumption of finality within the case, resting "on the salutary and sound public policy that litigation should come to an end."

*United States v. Mendez*, 102 F.3d 126, 131 (5th Cir. 1996) (citations omitted).

Although Lawrence was tried jointly with Tolliver, the doctrine of the law of the case does not govern his claim. Tolliver's § 2255 motion is not the same "case" as Lawrence's § 2255 motion. The conviction and its appeal constituted a discrete case. The subsequent post-conviction motions are distinct both from the initial proceeding, which became final with our affirmance of the convictions, and from each other. Thus, there is no law of the case that binds the instant motion to vacate, and the doctrine did not require the district court to reach the same result in considering the respective motions filed by Lawrence and Tolliver in separate proceedings.

B

Lawrence also argues that the disparate treatment in this case contravenes the policy underlying the United States Sentencing Guidelines, which were intended to achieve "reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders." U.S.S.G., Ch.1, Pt. A(3); *see* 28 U.S.C. § 991(b)(1)(B) (identifying the Guidelines' purpose of "avoiding unwarranted sentencing

15

disparities").

There are a number of problems with appellant's invocation of the Sentencing Guidelines.  First, it was 18 U.S.C. § 924(c)(1), the statutory provision under which Lawrence was convicted, that set the mandatory sentence imposed on him by the court.  Thus, as a technical matter, the Sentencing Guidelines had no bearing on his sentence.  Second, Lawrence's comparison of the sentences imposed on him and Tolliver is inapt: The district court vacated Tolliver's § 924(c)(1) conviction and its attendant sentence; Lawrence cannot now claim that he received a longer sentence for the same crime, as he is the only one who now stands convicted of that offense. Although Congress intended that the Guidelines result in a sentencing regime that eschews unwarranted disparities, it is hardly "unwarranted" that a convicted defendant be sentenced to the statutorily prescribed term while a different defendant with a vacated conviction not be similarly sentenced.  *See United States v. Rhodes*, 145 F.3d 1375, 1381 (D.C. Cir. 1998) ("Distinguishing between prisoners whose convictions are reversed on appeal and all other prisoners hardly seems 'unwarranted.'").  Finally, the Sentencing Guidelines themselves do not require equalization of co-defendants' sentences.  *See, e.g.*, *United States v. Pierce*, 893 F.2d 669, 678 (5th Cir. 1990); *United States v. Boyd*, 885 F.2d 246, 249 (5th Cir. 1980).  We have held that "disparity of sentences among co-defendants simply cannot be deemed an aggravating or mitigating circumstance.  As such, it is not a proper basis for departure, either upward or downward." *United States v. Ives*, 984

16

F.2d 649, 651 (5th Cir. 1993). Thus, the Sentencing Guidelines, if they were to suggest a resolution to the instant matter, would not dictate that Lawrence receive the same sentence as that imposed on his co-defendant.

C

Finally, Lawrence complains that it is not "fair" that his § 2255 motion was treated differently solely because he filed it a few months after his co-defendant filed his same motion. He has not indicated, however, why it would be any less unfair to grant him the relief he seeks based solely on the success of his co-defendant while other defendants convicted by juries receiving improper "use" instructions will have, or have had, their motions opposed and denied. *Cf. Baker v. Director, United States Parole Commission*, 916 F.2d 725, 727 (D.C. Cir. 1990) (rejecting an equal protection argument based on the fact that persons who committed similar crimes after implementation of the Sentencing Guidelines would receive shorter sentences and noting that the defendant was "in no worse position than those who were sentenced at the same time as he under the laws applicable at that time"). Lawrence has not suggested that his motion was treated differently than other defendants' *Bailey*-based § 2255 motions filed at the same time as and subsequent to his motion. Nor has he argued that his motion warranted relief on the merits. By narrowing the focus to a simple comparison between Lawrence and Tolliver alone, Lawrence fails to grasp that he is being accorded the statutorily prescribed penalty for the offense that he committed. Lawrence has not persuaded us

that fairness--to Lawrence, to similarly situated defendants, or to the public--dictates that he share in his co-defendant's windfall.

                                    IV

The district court did not err in denying Lawrence's motion to vacate the conviction and sentence under 18 U.S.C. § 924(c)(1). Nor did it err in rejecting the arguments raised in Lawrence's motion for reconsideration. Accordingly, the judgment of the district court is AFFIRMED.


<span style="color:red">ENDRECORD</span>

EMILIO M. GARZA, Circuit Judge, specially concurring:


I concur in the judgment and the opinion, except with respect to Part II. Lawrence argues that the district court's disparate treatment of him and co-defendant Tolliver violated the Equal Protection Clause. I agree with the majority that this claim fails because Lawrence has not asserted that the court's denial of his motion was motivated by animus or some impermissible criteria. I would decline to address whether the Government's opposition to his motion violated the Equal Protection Clause. Lawrence has not raised this argument—his basic assertion that the Government's change in position was "unjustified" is not tantamount to a constitutional challenge. Thus, I concur in the reasoning of Part II insofar as it addresses Lawrence's Equal Protection claim against the district court.