In the
United States Court of Appeals
For the Seventh Circuit

Nos. 98-1150 & 98-1151

United States of America,

Plaintiff-Appellee,

v.

Brian K. McMutuary and Dante A. Grier,

Defendants-Appellants.

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 CR 25--Elaine E. Bucklo, Judge.

Argued January 11, 1999--Decided
on Resubmission June 21, 2000/* /**


Before Fairchild, Manion and Kanne, Circuit Judges.

Kanne, Circuit Judge.  Brian McMutuary, Dante
Grier and Steven Brown participated in the armed
robbery of Southwest Financial Bank in Chicago.
A superseding indictment charged each with
conspiracy to commit armed bank robbery, armed
bank robbery and use of a firearm in connection
with a crime of violence. McMutuary also was
charged with one count of perjury. Brown entered
a plea of guilty on all counts of the original
indictment (which contained the same charges with
respect to Brown as the superseding indictment)
pursuant to a written plea agreement in which he
agreed to provide assistance to the government.
In considering Brown's sentence, the district
court departed downward because of the
substantial assistance provided to the government
by Brown and because of his family circumstances
and sentenced Brown to a period of one year home
confinement followed by a period of probation.
After Brown pleaded guilty, a jury convicted
McMutuary and Grier on all counts of the
superseding indictment. The district court
sentenced McMutuary to 195 months in prison and
Grier to 138 months in prison.

On appeal, Grier argues that the district court
erred by denying his motion to dismiss the
indictment for prejudicial pre-indictment delay.
McMutuary and Grier assert that the district
court erred in refusing to consider a downward
departure from their sentencing ranges based on
a perceived unjustified disparity between their
sentences and the sentence imposed on Brown. We

reject Grier's argument regarding the pre-indictment delay, and although we agree that an unjustified disparity existed between the sentence imposed on Brown and the sentences imposed on McMutuary and Grier, we find no error in the district court's refusal to consider this disparity in the computation of McMutuary's and Grier's sentences. Accordingly, we affirm the decisions of the district court.

I.  History

On February 18, 1992, Brown entered Southwest Financial Bank, where McMutuary worked as a coin and currency teller, and presented a note to the bank's vault custodian demanding to be shown the location of the bank's safe deposit boxes. To ensure the bank took his demand seriously, Brown showed the custodian a handgun, which he had placed in the waistband of his pants. The custodian led Brown to the vault where McMutuary was waiting. Brown then pulled the gun from his waistband and instructed the custodian and McMutuary to fill a duffle bag with money. Once the bag was filled with money, Brown told McMutuary to bind the custodian with tape. To make it appear that McMutuary was not involved in the robbery, Brown did the same to McMutuary before exiting the bank.

Events before and after the robbery clearly established that McMutuary, Grier and Brown acted in concert in robbing the bank. On the day before the robbery, Grier approached Brown and inquired about his interest in participating in a bank robbery. Grier explained that he and McMutuary intended to rob the bank where McMutuary worked, and McMutuary's participation in the scheme would facilitate the robbery. Grier would simply enter the bank, and McMutuary would fill his bag with money. Based on Grier's assurances regarding the manner in which the plan would be carried out, Brown agreed to participate in the robbery by acting as the getaway driver.

On the day of the robbery, Brown and Grier parked McMutuary's car across the street from the bank and waited for McMutuary to contact them. After receiving two pages on his beeper from McMutuary, Grier entered the bank. He quickly returned, informing Brown that a security guard deterred him from following through with the plan. A few minutes later, Brown entered the bank and once he was satisfied that the security guard was not at his post, presented a demand note to the vault custodian. Brown left the bank upon completion of the robbery and placed the money in the trunk of McMutuary's car, and Grier and Brown drove off. Two days later, McMutuary, Brown and Grier met at a nearby hotel and split the money.

During the investigation conducted by the Federal Bureau of Investigation, local authorities and a federal grand jury, McMutuary and Grier told conflicting stories regarding their involvement in the robbery. Eventually, the two recanted portions of their stories. Based in part on the testimony of McMutuary and Grier and their interviews with authorities, a federal grand jury returned an indictment charging McMutuary and Brown with conspiracy to commit armed bank robbery in violation of 18 U.S.C. sec. 371, armed bank robbery in violation of 18 U.S.C. sec. 2113(a) and (d) and use of a firearm in connection with a crime of violence in violation of 18 U.S.C. sec. 924(c). Additionally, McMutuary was indicted on a single charge of perjury. A superseding indictment was subsequently returned by the grand jury charging McMutuary and Brown with the same crimes and also charging Grier with conspiracy to commit armed robbery, armed robbery and use of a firearm in connection with a crime of violence.

Brown entered a plea of guilty on all counts of the original indictment pursuant to a written plea agreement in which he agreed to cooperate with the government. McMutuary and Grier proceeded to trial after the district court denied Grier's motion to dismiss the indictment based on a claim of prejudicial pre-indictment delay. The jury convicted both McMutuary and Grier on all counts.

A straightforward application of the United States Sentencing Guidelines to Brown's conviction placed Brown in a sentencing range of 117 to 131 months--57 to 71 months for the robbery and conspiracy charges, combined with a consecutive 60-month minimum mandatory sentence for the violation of sec. 924(c). In exchange for Brown's cooperation, the government specified in the plea agreement that at the time of Brown's sentencing, it would file a motion pursuant to U.S.S.G. sec. 5K1.1, requesting a downward departure from the applicable Guidelines range and the statutory minimum sentence to a term of imprisonment one-third lower than the combined term required by the Guidelines for the conspiracy and armed robbery charges and the additional term required by his plea of guilty to the sec. 924(c) charge.

Brown moved for an additional downward departure based on extraordinary family circumstances. At his sentencing hearing, members of Brown's family testified in support of his claim that he was needed at home to care for his elderly and ill parents and his eleven-year-old niece. Although the government opposed Brown's motion, the

government nevertheless moved for the downward departure as agreed in Brown's plea agreement. Upon consideration of the motions made by both Brown and the government, the district court departed downward fourteen offense levels and sentenced Brown to twelve months home detention followed by a period of probation. In imposing that sentence, the court cited both Brown's cooperation with the government and his family circumstances as grounds for the departure, but did not specifically assign either ground to any aspect of the departure.

Prior to sentencing, McMutuary and Grier moved for downward departures based on a perceived disparity between Brown's sentence and the sentences called for under their own Guidelines ranges. The district court denied this motion, reasoning that "the only way [the court] could grant your motion . . . would be to say that I granted an improper departure [with respect to Brown], and I do not believe that I did." Although the court rejected McMutuary's and Grier's requests for downward departures, the district court sentenced them to the lowest sentences available under the Guidelines for the conspiracy and armed robbery offenses combined with the required consecutive sixty-month sentence for the violation of sec. 924(c). The district court sentenced Grier to a term of 138 months in prison. Because of an enhancement for his perjury conviction, McMutuary received a term of imprisonment of 195 months. Grier now appeals the denial of the motion to dismiss the indictment based on prejudicial pre-indictment delay, and McMutuary and Grier both appeal the sentences imposed on them by the district court.

II.  Analysis

A.  Pre-indictment Delay

Grier was first named as a defendant in the superseding indictment returned by the grand jury on February 11, 1997--nearly five years after the robbery. Grier claims that the government's delay in prosecuting him caused him actual and substantial prejudice by severely hampering his ability to defend himself against the charges contained in the superseding indictment. Grier's claim of actual and substantial prejudice is predicated upon his assertion that he was unable to present the testimony of a material witness who died during the period of the government's delay. Furthermore, Grier submits that the prejudice he suffered was not outweighed by the government's proffered justification for its delay. Accordingly, Grier contends that the district court erred in denying his motion to dismiss the indictment based on pre-indictment

delay. We review a district court's decision to deny a motion to dismiss an indictment for prosecutorial delay for an abuse of discretion. See United States v. Spears, 159 F.3d 1081, 1084 (7th Cir. 1998); United States v. Pardue, 134 F.3d 1316, 1319 (7th Cir. 1998).

A defendant's primary safeguard against unreasonable prosecutorial delay is derived from the applicable statute of limitations. See Pardue, 134 F.3d at 1319. However, "we have also noted that the Fifth Amendment's due process clause plays a limited role in assuring that the government does not subject a defendant to oppressive delay." Spears, 159 F.3d at 1084. To establish that a pre-indictment delay violated the Due Process Clause, a defendant first must demonstrate that the delay caused actual and substantial prejudice to his right to a fair trial. See United States v. Sowa, 34 F.3d 447, 450 (7th Cir. 1994). A defendant's burden to show actual and substantial prejudice is an exacting one; the showing must rest upon more than mere speculative harm. See United States v. Canoy, 38 F.3d 893, 902 (7th Cir. 1994). The defendant's allegations of actual and substantial prejudice must be "specific, concrete, and supported by evidence." Sowa, 34 F.3d at 450 (quoting Pharm v. Hatcher, 984 F.2d 783, 787 (7th Cir. 1993)); see also United States v. Koller, 956 F.2d 1408, 1415 (7th Cir. 1992). If the defendant succeeds in showing prejudice, the burden shifts to the government "[to] show that the purpose of the delay was not to gain a tactical advantage over the defendant or for some other impermissible reason." Spears, 159 F.3d at 1084-85; see also Sowa, 34 F.3d at 451.

As stated, Grier's claim of actual and substantial prejudice is related entirely to his inability to call a single witness at trial. Grier contends that the testimony of his aunt, Margaret Blackman, was critical to his defense, but that he was unable to present this testimony because she died prior to the return of Grier's indictment by the grand jury. According to the affidavit of Blackman's daughter, Cassandra Blackman, had Margaret Blackman been called to testify at trial, she would have testified that she lived with Grier and that he did not leave their residence on the day of the robbery. Therefore, this testimony would have provided Grier with an alibi defense.

Although the loss of a vital defense witness may satisfy a defendant's burden to demonstrate prejudice, we do not conclude that Grier suffered actual and substantial prejudice as a result of his inability to call Margaret Blackman as a witness in the present case. In light of other

testimony offered at trial on Grier's behalf, it would be difficult to characterize Margaret Blackman as a "vital defense witness." Her testimony would have been largely cumulative of the testimony offered by Cassandra Blackman, who testified that she, like Margaret Blackman, lived with Grier and that he was at home during the entire day of the robbery. The testimony of Margaret Blackman would have simply corroborated the alibi defense ultimately offered by Cassandra Blackman. As we have stated, "the absence of cumulative testimony cannot, as a matter of law, result in actual prejudice." Spears, 159 F.3d at 1085-86 (quoting United States v. Comosona, 848 F.2d 1110, 1114 (10th Cir. 1988)). To the extent that the jury may have viewed Cassandra Blackman's testimony as biased or unworthy of credence because she was a member of Grier's family, Margaret Blackman's testimony would have done little to cure these perceptions. Accordingly, Grier failed to demonstrate that he suffered actual and substantial prejudice as a result of the pre-indictment delay.

We recognize in passing that even if we were to conclude that Grier suffered actual and substantial prejudice, the government offered a credible explanation for the delayed filing of the indictment that would not be outweighed by the prejudice claimed by Grier. The government informed the district court that the timing of the indictment was designed to permit the pursuit of evidence that would corroborate the information provided to the government by Brown after he implicated his co-defendants. The government explained that it was necessary to obtain and analyze bank records, hotel records, credit histories and employment histories, among other evidence. The timing of the indictment was further necessitated to provide the government with an opportunity to pursue evidence of the defendants' use of the proceeds of the robbery. Finally, it is also worth noting that there has been no showing that the explanation offered by the government was pretextual. Grier has pointed to no evidence suggesting that the government even knew of Margaret Blackman's existence or her health condition. The cause of the delay can only be characterized as investigatory in nature, and in such cases, we will not find a due process violation. See Sowa, 34 F.3d at 451.

B.   Sentencing Disparities

McMutuary and Grier claim that the district court erred in refusing to consider the disparity between Brown's sentence and their own sentences as a basis to depart downward from the range imposed by the Guidelines. They contend that the disparity between the sentence imposed on Brown

and their own sentences cannot be justified under a proper application of the Guidelines. For this reason, the district court should have considered this unjustified disparity in deciding whether to depart from the applicable Guidelines range in imposing their sentences.

We review decisions regarding departures from the Guidelines for abuse of discretion. See United States v. Gonzalez-Portillo, 121 F.3d 1122, 1123 (7th Cir. 1997). This standard applies "to both factual determinations and . . . 'review to determine that the discretion was not guided by erroneous legal conclusions.'" Id. at 1124 (quoting Koon v. United States, 518 U.S. 81, 100 (1996)). In applying this standard, we recall that "whether a factor is a permissible basis for departure under any circumstances is a question of law, and the court of appeals need not defer to the district court's resolution of the point" because "[a] district court by definition abuses its discretion when it makes an error of law." Koon, 518 U.S. at 100.

1.   Koon and Meza

Because defendants' arguments are based on an understanding of the Supreme Court's holding in Koon, and our own holding in United States v. Meza, 127 F.3d 545, 550 (7th Cir. 1996), we must first review these decisions. In promulgating the Sentencing Guidelines, the Sentencing Commission intended "the sentencing courts to treat each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes." Koon, 518 U.S. at 93 (quoting U.S.S.G. ch. 1, pt. A, intro. cmt. 4(b) (1995)). While a court generally must impose a sentence within the applicable Guidelines range, the Sentencing Commission realized that certain cases that for one reason or another were 'unusual' would fall outside the heartland. In such atypical cases, the sentencing court must consider whether particular factors warrant a departure from the applicable Guidelines range. See id. at 94 ("Atypical cases were not 'adequately taken into consideration,' and factors that may make a case atypical provide potential bases for departure."). Therefore, "before a district court is permitted to depart in a given case, certain features of the case must be found 'unusual' enough for it to fall outside the 'heartland' of cases covered in the applicable guideline." United States v. Leahy, 169 F.3d 433, 440 (7th Cir. 1999).

However, the Guidelines do not leave the determination of whether a factor merits a departure from the heartland entirely to the discretion of the district court. Instead, the

Sentencing Commission has delineated four categories of sentencing factors to determine whether a case is atypical: forbidden, encouraged, discouraged and unmentioned. Among these categories, only "forbidden" factors may never provide a basis for departure from a sentencing range. These factors include race, sex, national origin, creed, religion, socioeconomic status, physical conditions, such as drug or alcohol dependence, and economic hardship. See U.S.S.G. sec.sec. 5H1.10, 5H1.4, 5K2.12. District courts are otherwise free to depart if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the sentencing commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. sec. 3553(b).

In Koon, the Supreme Court recognized that a sentencing court must make two inquiries in determining whether a specific factor can be an appropriate basis for departure. 518 U.S. at 109. The court must first determine "whether the [Sentencing] Commission has proscribed, as a categorical matter, consideration of the factor." Id. If the Commission has not determined that the factor is prohibited, "the sentencing court must determine whether the factor, as occurring in the particular circumstances, takes the case outside the heartland of the applicable Guideline." Id. The Supreme Court held that "for the courts to conclude that a [non-prohibited] factor must not be considered under any circumstances would be to transgress the policymaking authority vested in the Commission." Id. at 106-07.

In Meza, we considered whether, in light of Koon, a district court could rely on a disparity between sentences of co-conspirators in order to justify a departure from a Guidelines range not subject to a statutory minimum. 127 F.3d at 549-550. At the time of sentencing, the defendant in Meza moved for a downward departure based on a perceived disparity between the sentence called for under the Guidelines in his case and the sentences previously imposed on his co-conspirators. These co-conspirators had received downward departures pursuant to U.S.S.G. sec. 5K1.1 for cooperating with the government. Although the defendant refused to cooperate with the government, he still believed that a departure was warranted in his case. The defendant argued that Koon required the district court to consider the sentencing disparity as a potential basis for departure because the Sentencing Commission, as a categorical matter, has not proscribed any consideration of sentencing disparities. See Meza, 127 F.3d at

548.

Although we denied the defendant's appeal, we declined to hold that a sentencing court should never consider the disparity between sentences of co-defendants as a basis for departure from the applicable Guidelines range because of the prohibition against across-the-board rejection of a factor recognized by the sentencing court in Koon, 518 U.S. at 106-07, and the directive that the sentencing court should consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. sec. 3553(a)(6). See also Meza, 127 F.3d at 549-50. Instead, we bifurcated our analysis between "justified" and "unjustified" sentencing disparities. We described a justified disparity as one resulting from a proper application of the Guidelines to the particular circumstances of a case./1 It is clear that the Sentencing Commission adequately considered justified disparities between the sentences "as it is the Guidelines that produce the disparity," Meza, 127 F.3d at 550, and a factor may only be considered as a basis for departure if it has not been adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. See 18 U.S.C. sec. 3553(b). Therefore, we concluded that a justified disparity could never serve as a basis for a departure from the Guidelines sentencing range. See Meza, 127 F.3d at 550. Because we concluded that the sentencing disparity that existed between co-conspirators in Meza was justified, we affirmed the decision of the district court not to consider it as a basis for departure. See id.

Although unnecessary to the holding of the case, we also considered the applicability of considering an unjustified disparity, which we defined as "one that does not result from a proper application of the Guidelines. In other words, it is a disparity in sentences that cannot be explained by a comparison of each defendant against the Guidelines as a set of rules." Meza, 127 F.3d at 550. Because we found no evidence that the Sentencing Commission considered the possibility of unjustified departures in formulating the Guidelines, we concluded that an unjustified disparity could potentially serve as a factor to consider in determining whether to depart from the applicable Guidelines range. See id.

2. Justification for Disparity

McMutuary and Grier contend that the sentencing disparity of which they complain arose from the district court's decision to sentence their co-

conspirator Brown to a twelve-month period of home detention and probation, while they received sentences within the applicable Guidelines range. McMutuary and Grier claim that Brown's sentence did not result from a proper application of the Guidelines. As such the disparity between the sentences of the co-defendants is unjustified, and they contend that the sentencing court should have considered this unjustified disparity in determining whether to depart from the applicable Guidelines range. We turn first to an examination of Brown's sentence.

a.  Facts

Brown pleaded guilty to the same charges for which McMutuary and Grier were convicted: conspiracy to commit bank robbery in violation of 18 U.S.C. sec. 371; armed bank robbery in violation of 18 U.S.C. sec. 2113(a) and (d); and use of a firearm in relation to a crime of violence in violation of 18 U.S.C. sec. 924(c). The district court concluded that Brown's plea of guilty to these charges resulted in a total offense level of twenty-four and a criminal history category of II under the Guidelines. This calculation resulted in a sentencing range of fifty-seven to seventy-one months, with an additional consecutive sixty-month sentence imposed on Brown as a result of the violation of sec. 924(c)./2

As a result of Brown's cooperation with the government, the government included a paragraph in Brown's plea agreement providing that at the time of Brown's sentencing, the government would move the court pursuant to U.S.S.G. sec. 5K1.1 "to depart from the applicable Guidelines range and the statutory minimum sentence, and to impose a sentence of imprisonment . . . of 66% of the low end of the combined sentencing range that results from the aggregation of the five-year mandatory minimum prison term for carrying and using a firearm during and in relation to a crime of violence with the low end of the applicable guideline range for the remaining offenses." Prior to sentencing, Brown also moved for a downward departure based on extraordinary family circumstances, and at his sentencing, he presented testimony of family members in support of his claim that he was needed at home to care for his parents and his eleven year-old niece. The government opposed this motion, but at sentencing moved pursuant to the plea agreement for departure under U.S.S.G. sec. 5K1.1.

After considering both the government's and Brown's motions, the district court departed downward to an offense level of ten and sentenced Brown to a period of twelve months of home

detention and probation. In imposing that sentence, the court cited both Brown's cooperation and his family circumstances, but failed to assign either ground to any particular aspect of its departure. In sentencing Brown, the district court departed below both the applicable Guidelines range and the statutory minimum mandatory five-year sentence required by the count charging Brown with violating sec. 924(c). While a court may impose a sentence below a defendant's Guidelines range based on a substantial assistance motion, imposition of a sentence below a statutory minimum (such as the one required by sec. 924(c)) requires a motion by the government pursuant to 18 U.S.C. sec. 3553(e)./3 In this case, sec. 3553(e) provides for only one basis for departure below a statutory minimum mandatory--upon motion by the government for substantial assistance provided by the defendant. See United States v. DeMaio, 28 F.3d 588, 591 (7th Cir. 1994) ("[T]he district court may only depart below a statutory mandatory minimum sentence to reflect a defendant's substantial assistance to the authorities."); United States v. Thomas, 11 F.3d 732, 736-37 (7th Cir. 1993) (stating that departures from minimum mandatory sentences allowed only for assistance to the government). Absent a sec. 3553(e) motion by the government, the sentencing court may not depart below the statutory minimum mandatory except in limited circumstances not relevant to this case.

b.  Analysis

McMutuary and Grier contend that the district court's decision to depart below the statutory mandatory minimum sentence resulted from an improper reliance on Brown's family circumstances. They assert that the government did not move pursuant to sec. 3553(e) for a departure below the statutory mandatory minimum required by the sec. 924(c) count, and, therefore, the district court must have necessarily relied on Brown's family circumstances. Although the government submits that it moved pursuant to sec. 3553(e) for a departure below the mandatory minimum, the government concedes that "it seems impossible to say that the district court did not incorrectly base its decision to depart below the five-year minimum, at least in part, on Brown's family circumstances." The defendants believe the erroneous nature of Brown's sentence resulted in a sentencing disparity that cannot be justified by a proper application of the Guidelines. Therefore, they argue that the district court should have considered this disparity when examining their motions for a downward departure.

The government's contention that it moved pursuant to sec. 3553(e) for a downward departure below the statutory mandatory minimum with respect to Brown's sentence is, at the very least, disingenuous. While an explicit reference to sec. 3553(e) is not necessarily required before a sentencing court may depart below a statutory minimum, "the Government must in some way indicate its desire or consent that the court depart below the statutory minimum before the court may do so." Melendez v. United States, 518 U.S. 120, 126 n.5 (1996).

The government bases its argument that it communicated its consent to a departure below the statutory mandatory minimum on certain language in the plea agreement. A paragraph in the plea agreement specified that at the time of Brown's sentencing the government would request that the district court depart downward pursuant to U.S.S.G. sec. 5K1.1 "from the applicable sentencing guidelines range and the statutory minimum sentence."

However, when the language of the plea agreement is juxtaposed with other language in the plea agreement and the government's oral motion for departure made at the time of Brown's sentencing, it is clear that the government did not desire or consent to a departure below the statutory mandatory minimum. The terms of the plea agreement stated that the government would request that the district court reduce by one-third the combined sentencing range that resulted from the aggregation of the five year mandatory prison term for the sec. 924(c) violation with the applicable Guidelines range for the remaining offenses. The request for a one-third departure was reiterated at Brown's sentencing hearing. However, no mention was made of a departure below the statutory mandatory minimum. At best, Brown could have received a sentence of seventy-eight months pursuant to the terms of the plea agreement. We recognize that the district court would not have been bound by the government's request for a one-third reduction.

Nevertheless, our examination of the agreement and the government's motion at Brown's sentencing hearing belies any suggestion that the government desired or consented to a departure below the statutory mandatory minimum. It necessarily follows that the district court was without power "to impose a sentence below the statutory minimum to reflect a defendant's cooperation when the Government has not authorized such a sentence, but has instead moved for a departure only from the applicable Guidelines range." Melendez, 518 U.S. at 126. The fact that the government passed up the opportunity to appeal the error in Brown's

sentence has no impact on this conclusion.

It is clear then that the district court erred in departing below the statutory mandatory minimum of five years imprisonment when it imposed a sentence of probation and home confinement upon Brown. Because Brown would not have received this sentence in the absence of the district court's error, the error contributed, at least in part, to the disparity in the sentences imposed. This disparity is not "the result of a proper application of the Guidelines to the particular circumstances of [this] case." Meza, 127 F.3d at 550./4 Rather, it is the result of the district court's error in departing below the statutory mandatory minimum when sentencing Brown. For this reason, the disparity in the present case can only be described as unjustified disparity between the sentences of co-conspirators. McMutuary and Grier rely on this error to contend that the sentencing court should have considered the disparity between their sentences and Brown's sentence in determining their sentences.

3.  Applicability of Meza

We now are confronted with an issue that was anticipated in Meza: whether the district court must consider an unjustified disparity in the sentencing of co-defendants as a factor in determining whether to grant a downward departure. In Meza, we noted that in the case of an unjustified disparity, the sentencing court should consider the disparity to determine whether a defendant merits a departure downward "so that the federal courts may provide 'the even-handedness and neutrality that are the distinguishing marks of any principled system of justice.'" 127 F.3d at 550 (quoting Koon, 518 U.S. at 113). While we acknowledge that "[t]he goal of the Sentencing Guidelines is, of course, to reduce unjustified disparities," Koon, 518 U.S. at 113, we believe that the interpretation of the term "unjustified disparity," provided as dicta in Meza, which would require the sentencing court to consider all unjustified sentencing disparities between co-defendants as a basis to depart from the applicable Guidelines range, focuses too narrowly on comparison of sentences of participants in one offense, rather than on comparison of sentences of all persons convicted of the same offense, nationwide.

As we noted in Meza, the determination of whether to consider a factor as a permissible basis for departure depends on whether the Commission has adequately taken it into consideration in its construction of each Guideline's heartland. See Meza, 127 F.3d at 550.

By the creation of a heartland, the Commission intended that each federal sentence for the same federal crime be judged under the same standard. See 28 U.S.C. sec. 991(b) ("The purposes of the United States Sentencing Commission are to . . . provide certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct . . ."). In furtherance of this purpose, the Sentencing Commission promulgated Guidelines sec. 1B1.4, which limits the information that may be considered in imposing a sentence to "any information concerning the background, character and conduct of the defendant." U.S.S.G. sec. 1B1.4. The sentences imposed on others who have been convicted of similar criminal conduct do not constitute information about the background, character or conduct of a particular defendant. Rather, the Guidelines by their nature anticipate the range of sentences of others found guilty of similar criminal conduct, suggesting that, by promulgating them, the Commission expressly considered the degree to which sentencing courts may consider the sentences given to others. Therefore, a plain language interpretation of sec. 1B1.4 would seem to expressly preclude sentencing courts from considering the sentences imposed on others as a basis to be used for imposing a sentence.

However, sec. 1B1.4 may also be construed as a grant of authority to consider the character and conduct of the defendant beyond those acts for which the defendant was convicted, and at least one other court has found that this guideline was not intended as "a limitation on the court's power to consider other factors if appropriate." United States v. Newby, 11 F.3d 1143, 1149 (3d Cir. 1993). This expansive interpretation of sec. 1B1.4 corresponds more directly to the statutory requirement of sec. 3553(a)(6), which directs courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. sec. 3553(a)(6). On this basis, courts occasionally have included sentencing disparity between co-defendants among the factors to be considered in departing from the heartland of the Guidelines' sentencing range. See United States v. Daas, 198 F.3d 1167, 1180-81 (9th Cir. 1999); Meza, 127 F.3d at 550; United States v. Nelson, 918 F.2d 1268 (6th Cir. 1990). The inclusion of sentencing disparity between co-defendants as a factor in the determination of whether to depart seemingly accords with Koon's directive that courts of appeals not render impermissible a factor not contemplated by the Sentencing Commission. See

Koon, 518 U.S. at 106-107.

Despite Koon, most other courts have concluded that sentencing disparities between co-defendants should never constitute a permissible basis for departure from the Guidelines' sentencing range. See, e.g., United States v. McKnight, 186 F.3d 867, 869 (8th Cir. 1999) (citing United States v. Polanco, 53 F.3d 893, 897 (8th Cir. 1995)); United States v. Contreras, 180 F.3d 1204, 1209-10 (10th Cir. 1999); United States v. Lawrence, 179 F.3d 343, 351 (5th Cir. 1999); United States v. Gallegos, 129 F.3d at 1143-44; United States v. Perkins, 108 F.3d 512, 515 (4th Cir. 1997). Those courts rejecting the permissibility of using co-defendants' sentences as a factor to depart distinguish their decisions from the appellate court conduct prohibited by Koon, 518 U.S. at 107, by claiming that the rejection of this factor acted to clarify the types of sentencing disparities that courts must consider under sec. 3553(a)(6). See Gallegos, 129 F.3d at 1143. In Gallegos, the court explained that the promulgation of the Guidelines was an attempt by the Sentencing Commission to "eliminate unwarranted disparities [in sentencing] nationwide," 129 F.3d at 1143 (quoting United States v. Garza, 1 F.3d 1098, 1100 (10th Cir. 1993)), rather than to eliminate disparity between co-defendants. As such, the disparity between co-defendants' sentences was an implicit consideration of the Sentencing Commission.

For this reason, rather than curing the problem of nationwide sentencing disparity, consideration of the sentences given to co-defendants "creates a new and entirely unwarranted disparity between the defendant's sentence and that of all similarly situated defendants throughout the country." Joyner, 924 at 460-61. In addition, in Gallegos, the court noted the practical consideration that allowing consideration of sentencing disparities among co-defendants as a basis for departure might discourage the government from offering plea bargains in cases involving multiple defendants, see United States v. Garrett, 179 F.3d 1143, 1145 (9th Cir. 1999), a scenario that we would find troubling, although we find this scenario inherently improbable.

In Meza, we held that justified disparities, which include all disparities which arise from a proper application of the Sentencing Guidelines, should never be considered as permissible bases for departure. 127 F.3d at 549. However, we indicated that any unjustified disparity in sentences between co-conspirators was "potentially a sentencing factor to consider" as a basis for departure from the sentencing range. Id. at 550.

In light of the promulgation of Guidelines with the intent to create uniformity of sentencing nationwide for all similarly situated defendants, we believe that the Sentencing Commission implicitly considered the potential for disparity of sentences, whether justified or unjustified, between co-defendants in its creation of an applicable sentencing range. As such, we conclude that disparities between the sentences of co-defendants ordinarily should not be considered as a factor in the decision to depart from the Guidelines. Because district courts must only consider factors that have not been considered by the Sentencing Commission, see 28 U.S.C. sec. 3553(b), our holding that the naked existence of an unjustified disparity between the sentences of co-conspirators should not be considered as a basis for departure from the applicable sentencing range of the Guidelines does not conflict with the proscription in Koon that the appellate courts not create new classes of impermissible grounds for departure. As such, we believe that the sentencing court should consider only an "unjustified disparity" in the sentencing of co-defendants when the sentence imposed on the appellant co-defendant is "unjustified" in length in comparison to the sentences imposed on all other individuals appropriately sentenced under the Guidelines for similar criminal conduct.

On this basis, we correct the dicta in Meza that suggests that an unjustified disparity in co-conspirators' sentences should be considered as a factor in the decision to depart from the Guidelines. Instead, the sentencing court should consider unjustified disparities in only those cases where the unjustified disparity between co-defendants actually creates a disparity between the length of the appellant's sentence and all other similar sentences imposed nationwide. We refrain from holding, however, that unjustified disparities may never be considered as bases for departure. In certain circumstances, such as when an unjustified disparity is created by the abuse of prosecutorial discretion, but see United States v. Krilich, 159 F.3d 1020, 1031 (7th Cir. 1998) (holding that proper exercise of prosecutorial discretion does not create impermissible disparity), the sentencing court may consider the disparity as a factor in the determination whether to depart from the sentence of a co-defendant. In addition, a sentencing court abuses its discretion by deciding to depart from the applicable sentencing range for the sentence of any defendant, whenever such departure creates an unjustified disparity between the sentence of that defendant and the sentences of all other similarly situated individuals nationwide.

Neither McMutuary nor Grier contend that the district court erred in the computation of their sentences, nor did the district court depart from the applicable Guidelines range in their sentences. Absent a claim that the court should have considered the unjustified disparity created by the improper sentence the court granted Brown, neither party could even appeal the court's failure to consider a downward departure. See United States v. Mattison, 153 F.3d 406, 413 (7th Cir. 1998). Both McMutuary and Grier were sentenced to a term of imprisonment consistent with all other defendants convicted of similar criminal conduct, and neither party has presented any evidence that would suggest that a disparity exists between their sentences and the sentences of all other similarly situated defendants nationwide. For this reason, even though there was an unjustified sentence disparity relative to their co-defendant Brown, there was no unjustified or unwarranted disparity in these appellants' sentences, as those terms are used in Koon or in sec. 3553(a)(6). Were we to credit the appellants' arguments and reduce their sentences accordingly, this court would be creating the type of unjustified disparity between their sentences and the sentences of all other similarly situated defendants that the Guidelines were promulgated to avoid. We cannot abide by such a rule, which would allow three wrongs to equal one right. McMutuary and Grier fail to present an argument that the sentences imposed on them are illegally long, and we affirm the imposition of their sentences.

III.  Conclusion

For the reasons stated herein, we Affirm both the district court's rejection of Grier's motion to dismiss for pre-indictment delay and the sentences imposed on Grier and McMutuary by the district court.

FOOTNOTES

/* This court originally affirmed in part and reversed in part the decisions of the district court in United States v. McMutuary, 176 F.3d 959 (7th Cir. 1999). However, we subsequently granted the government's petition for rehearing and vacated our original opinion. See United States v. McMutuary, 200 F.3d 499 (7th Cir. 1999). We have issued this opinion without additional oral argument.

/** Because we now correct certain statements in United States v. Meza, 127 F.3d 545 (7th Cir. 1998), this opinion has been circulated among all judges of this court pursuant to Circuit Rule

40(e). No judge favored a rehearing en banc.

/1 In Meza, we identified several examples of how a proper application of the Guidelines could create a sentencing disparity. 127 F.3d at 549-50. It is clear from the examples set forth in Meza that the Commission contemplated that certain disparities in sentencing between co-defendants or co-conspirators could result from a proper application from the Guidelines. Therefore, justified disparities may never serve as a basis for departure. See also United States v. Gallegos, 129 F.3d 1140, 1144 (10th Cir. 1997) ("[A] departure based on a disparity between co-defendants is not justified when sentences are dissimilar because of a plea bargain."); United States v. Joyner, 924 F.2d 454, 460-61 (2d Cir. 1991) ("To reduce the sentence by a departure because the judge believes that the applicable range punishes the defendant too severely compared to a co-defendant creates a new and entirely unwarranted disparity between the defendant's sentence and that of all similarly situated defendants throughout the country."). As the Fourth Circuit also explained in United States v. Withers, 100 F.3d 1142, 1149 (4th Cir. 1996):

To base a defendant's sentence on a co-conspirator's sentence is a short-sighted approach which ignores the Guidelines' attempt to eliminate unwarranted sentencing disparities nation-wide . . . The Guidelines' goal of national sentencing uniformity is not aimed only at the particular criminal conduct that co-conspirators may share, but also addresses other factors that often vary between co-conspirators like acceptance of responsibility and assistance to the government.

/2 In its current form, 18 U.S.C. sec. 924(c)(1)(A)(i) provides:

[A]ny person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime . . . be sentenced to a term of imprisonment of not less than five years . . . .

/3 18 U.S.C. sec. 3553(e) provides:

Upon motion of the Government, the court shall

have the authority to impose a sentence below a level established by statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.

Pursuant to 18 U.S.C. sec. 3553(f)(1)-(5), a defendant may also be eligible for a reduction below the mandatory minimum sentence if the sentencing court finds that the defendant has fulfilled five requirements. See also U.S.S.G. sec. 5C1.2 (reiterating these requirements). This section is referred to as a "safety valve" provision and limits the applicability of statutory minimum sentences as to "first-time, non-violent drug offenders who were not organizers of criminal activity and who have made a good faith effort to cooperate with the government." United States v. Arrington, 73 F.3d 144, 147 (7th Cir. 1996).

/4 The government's effort to cast the error made by the district court as a "non-Guidelines error" with the effect of 18 U.S.C. sec. 3553(e) operating completely outside the context of the Guidelines is of no avail. Proper application of the Guidelines requires more than a rote computation of Criminal History Categories and Guidelines ranges. Statutory mandatory minimum sentences are explicitly contemplated in several sections of the Guidelines, and the Guidelines address how courts should deal with such sentences. For example, U.S.S.G. sec. 2K2.4 specifically refers to the effect of sec. 924(c) upon a defendant's sentence: "If the defendant, whether or not convicted of another crime, was convicted under 18 U.S.C. . . . sec. 924(c) . . ., the term of imprisonment is that required by the statute." U.S.S.G. sec. 2K2.4.