In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2948

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

BOB BRUMLEY,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 98 CR 146--John D. Tinder, Judge.

Argued January 20, 2000--Decided July 12, 2000

Before COFFEY, MANION and ROVNER, Circuit Judges.

ROVNER, Circuit Judge.  A jury convicted Bob
Brumley of conspiracy to possess with intent to
distribute methamphetamine, in violation of 21
U.S.C. sec. 841(a)(1). Brumley challenges both
his conviction and his sentence on a number of
grounds, contending that his confession was
involuntary, that he was entitled to a new trial
on the basis of newly discovered evidence, that
a DEA agent was erroneously allowed to give
expert testimony, that the indictment was flawed,
and that the disparity between Brumley's sentence
and that of his co-conspirators justified a
downward departure for his sentence. We affirm.

I.

In January 1997, Bob Brumley introduced Ralph
Meade to Jack Bishop at a party at Brumley's
home. Later, Brumley asked Meade if he could
supply Brumley with methamphetamine, telling
Meade that Bishop was capable of selling large
quantities of the drug. Meade apparently
responded favorably because Brumley then told
Bishop that Meade could supply unlimited amounts
of methamphetamine. Thereafter, Brumley served as
a middleman between Meade and Bishop. On
approximately six occasions between January 1997
and October 1998, Brumley supplied Meade with

cash and sometimes with rental cars so that Meade could travel to California to purchase methamphetamine. When Meade returned to Indiana, Brumley typically picked the drugs up from Meade's house and delivered them to Bishop, who sold the drugs locally. Brumley was a user as well as a dealer, and accepted both methamphetamine and cash in payment for his role in the arrangement. Apparently, he helped himself to a little too much of the take, and Meade and Bishop decided to cut him out of the loop when they discovered he had withheld three pounds of methamphetamine from Bishop. Meade and Bishop continued to provide Brumley with drugs to keep him quiet, but Meade began making deliveries directly to Bishop. All tolled, Meade transported approximately 28 pounds of methamphetamine from California to Indiana, with 20 pounds being funneled through Brumley and the rest being delivered directly to Bishop.

On Meade's last road trip, a Texas police officer stopped him for exceeding the posted speed limit. The officer asked for consent to search the vehicle, and Meade gave his consent. The officer found in the car two partially opened 5-gallon detergent buckets, each containing individually wrapped plastic bags filled with methamphetamine. Meade was arrested and decided to cooperate with law enforcement. He identified his California source, and agreed to make a controlled delivery to Bishop, but did not mention Brumley out of friendship. Bishop was arrested as a result of the controlled delivery and he also decided to cooperate with law enforcement. Bishop implicated Brumley and told the officers that Brumley carried a gun on occasion when delivering methamphetamine to Bishop's home. Meade ultimately implicated Brumley as well, telling the officers that Brumley acted as a middleman.

Shortly after these arrests, DEA agents executed a search warrant at Brumley's home in Indiana. The agents recovered methamphetamine, scales, cash, and two handguns, one in the house and another in a truck parked in the garage. They also recovered a slip of paper containing the phone number of Meade's source in California. The agents advised Brumley of his Miranda rights, and Brumley was cooperative throughout the search. Brumley was arrested and taken to DEA headquarters. Approximately three and a half hours after the agents began the search at Brumley's home, two agents began to interrogate Brumley. Although Brumley later disputed this point, the agents testified that they read Brumley his Miranda rights once again, and that Brumley then signed the waiver portion of the Miranda form. Thereafter, Brumley made

inculpatory statements to the agents that were used against him at trial.

In the district court, Brumley moved to suppress his post-arrest statement on the ground that he had not knowingly and voluntarily waived his Miranda rights. The district court held a hearing and found that the agents read Brumley his Miranda rights during the search of his house and later at DEA headquarters. The court also found that Brumley signed the waiver of rights form, and had in fact knowingly and voluntarily waived his Miranda rights. The case proceeded to trial where the district court allowed a DEA agent to testify as an expert on the issue of what quantities of methamphetamine constituted user and dealer amounts. Brumley objected to this testimony on the ground that the agent was not qualified to testify as an expert. After requiring additional voir dire of the witness, the district court allowed the agent to testify as an expert. The jury found Brumley guilty and the court sentenced him to 151 months of incarceration. His co-conspirators, who both cooperated with the government, were sentenced to considerably shorter terms of 71 months for Meade and 63 months for Bishop. Brumley appeals.

II.

On appeal, Brumley contends that his confession should have been suppressed at trial because he did not knowingly and voluntarily waive his Miranda rights and because his statement was made in the course of plea negotiations and was therefore inadmissable under Federal Rule of Criminal Procedure 11(e)(6)(D). He also objects to the DEA agent's expert testimony because the agent's opinion was based on subjective belief and not on any reliable methodology. Brumley asserts that the agent's opinion testimony was highly prejudicial and did not assist the trier of fact. Finally, Brumley complains that the district court erred in sentencing him because his maximum sentence should have been controlled by 18 U.S.C. sec. 371 due to an ambiguity in the indictment, and because the district court refused to recognize that the disparity between his sentence and that of his co-conspirators was a valid basis to depart downward.

A.

"We review de novo a district court's determination of whether a Miranda waiver was knowing and voluntary." United States v. Schwensow, 151 F.3d 650, 659 (7th Cir. 1998), cert. denied, 525 U.S. 1059 (1998). We review findings of historical fact deferentially, however, and reverse only for clear error. Id.

Brumley complains that the district court erred in finding that he knowingly and voluntarily waived his Miranda rights. At the suppression hearing, Brumley denied that the agents read him his rights when they executed the search warrant at his home, and testified that he did not recall seeing or signing the Miranda waiver form at the DEA office where he was questioned a few hours later. The agents, of course, told a different story and the district court found the agents more credible.

Normally, that observation would end our inquiry, but here Brumley raises what he characterizes as a newly discovered fact that he claims calls the agents' credibility into question. At the suppression hearing, Brumley admitted that the signature on the Miranda waiver appeared to be a copy of his signature (he was shown a photocopy of the form at the hearing), but denied having signed the form. After trial, he requested that the court allow a handwriting expert to examine the document. Over the government's objection, the court allowed the expert to examine the original waiver form. Brumley's own expert confirmed that the signature on the form was indeed Brumley's, but the expert found other marks on the document that could have been attempts to alter the form. In particular, there was evidence that someone had changed the "taken into custody" time on the form, and there were also ink touch-ups that the expert believed were an attempt to match ink colors. The expert also identified indented writing on the face of the document in three different places, but was unable to identify what the writing said without further testing. Brumley moved for further testing of the document, theorizing that he signed the document, if at all, as part of a stack of documents he signed while in court one day. He also moved for a new trial as a result of this newly discovered evidence. The district court denied the motion for further testing, and also denied the motion for a new trial. Brumley now argues that the district court abused its discretion in refusing to allow further testing of the Miranda form and also erred in refusing his request for a new trial.

The decision whether to grant a new trial is within the discretion of the district court. United States v. Gonzalez, 93 F.3d 311, 315 (7th Cir. 1996). Because he is relying on newly discovered evidence, Brumley must show that he became aware of the evidence only after the trial, that he could not have discovered the evidence by due diligence any sooner, that the evidence is material and that the evidence would probably lead to an acquittal in the event of a new trial. Id.; United States v. Fruth, 36 F.3d

649, 652 (7th Cir. 1994), cert. denied, 513 U.S. 1180 (1995). Brumley's argument fails on at least the first two prongs of the test for newly discovered evidence because Brumley himself surely knew before trial whether or not he had knowingly signed a waiver of his Miranda rights. He knew from the time of the suppression hearing at the latest that the government intended to rely on that written waiver. He could have moved to examine the document before trial but did not do so. The district court generously allowed him to examine the form after trial, but the court was under no obligation to offer even more post-trial discovery given Brumley's lack of diligence before trial. Brumley makes no attempt on appeal to explain this lack of diligence. The court was within its discretion to deny the motion for a new trial based on Brumley's lack of diligence in pursuing this evidentiary lead.

Brumley also contends that his confession was inadmissable because it was made in the course of plea negotiations. Federal Rule of Criminal Procedure 11(e)(6)(D) provides that statements made in the course of plea discussions with an attorney for the government which do not result in a plea of guilty or which result in a plea of guilty later withdrawn are not admissible against the defendant who participated in the plea discussions. Brumley did not confess to a government lawyer; he confessed to DEA agents. He argues, however, that the agents were acting with apparent authority for the United States Attorney's Office when they told Brumley they would help him if he helped them. Brumley contends that the agents acted as if they had authority to control the outcome of the case, that they offered his wife immunity if she would cooperate against her husband, and that the agents acted as if Brumley's cooperation would lead to a plea agreement disposing of the case.

Brumley did not raise this issue before the district court and therefore must pass the high hurdle of proving that the district court committed plain error. United States v. Kincaid, 2000 WL 626728, *5 (7th Cir. May 16, 2000). A party must raise and develop an argument before the district court or in its motions in order to provide the district court with an opportunity to consider all matters before it. Id. Because Brumley deprived the court of this opportunity, we deem this issue forfeited, and we review only for plain error. Id. Plain error review allows us to correct particularly egregious errors for the purpose of preventing a miscarriage of justice. Id. Brumley relies on a footnote in an Eighth Circuit case in support of his claim that Rule 11(e)(6)(D) applies to discussions with DEA agents as well as discussions with government

attorneys if the agents represent that they are working on behalf of the United States Attorney's Office. See United States v. Millard, 139 F.3d 1200, 1205 n.4 (8th Cir. 1998), cert. denied, 525 U.S. 949 (1998). In that case, the agent told the defendant that he was working directly with a particular Assistant United States Attorney ("AUSA"), that he had spoken to the AUSA about cooperation, and that if the defendant was interested in cooperating with the government, "we would offer him a particular deal." Moreover, while the agent was speaking with the defendant, he telephoned the AUSA to discuss what kind of deal could be offered to the defendant. Id.

Because Brumley did not raise this issue before the district court, the court never had an opportunity to rule on the factual much less the legal basis for Brumley's claim. We are left with Brumley's version of what the agents told him. Even if we take Brumley's version of events as true, however, we reject this claim for two reasons. First, Millard is distinguishable. The agent in that case made affirmative representations to the defendant that the agent was working with the AUSA to offer a particular deal if the defendant cooperated. Here, the agents made general statements that law enforcement officers commonly make, that cooperation would likely lead to a better outcome for the defendant. These statements were both true and innocuous. Second, and more importantly, our case law rejects this kind of argument. We pointed out in United States v. Springs, 17 F.3d 192, 195 (7th Cir. 1994), cert. denied, 513 U.S. 955 (1994), that the phrase "with an attorney for the government" was added to Rule 11(e) (6)(D) in 1979 precisely to prevent the argument that a voluntary statement made to law enforcement is rendered inadmissable merely because it was made in the hope of obtaining leniency by a plea. See also United States v. Lewis, 117 F.3d 980, 984 (7th Cir. 1997), cert. denied, 522 U.S. 1035 (1997) (Rule 11(e)(6) applies only to statements made to government attorneys and not to statements made to law enforcement agents). The agents here did not, even by Brumley's account, purport to be acting on behalf of the United States Attorney's Office. There is no reason to extend Rule 11(e)(6) under these facts, and the district court did not commit plain error by failing to suppress Brumley's statements on this basis.

B.

Brumley also objected to the admission of DEA Agent Dan Schmidt's testimony regarding what amounts of methamphetamine constituted user quantities and what amounts were dealer

quantities. Specifically, Brumley disputed the agent's conclusion that any amounts in excess of one ounce were distribution as opposed to personal use amounts. Brumley raises four objections to the admission of this testimony. First, the agent's opinion was based on his subjective belief or unsupported speculation. Second, the agent's opinion was not based on any professionally sound or reliable underlying methodology. Third, the agent was merely vouching for the credibility of one of Brumley's co-conspirators. Fourth, the agent's opinion testimony was highly prejudicial but did not assist the trier of fact in understanding the evidence or determining a fact in issue.

Federal Rule of Evidence 702 specifies:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The government sought to qualify Agent Schmidt as an expert in the area of drug trafficking, including packaging quantities, distribution methods, and user quantities versus distribution quantities. Agent Schmidt had approximately seven years of law enforcement experience, much of it involving investigations relating to narcotics and other drugs, including methamphetamine. He had, in the course of those investigations, interviewed people he arrested who decided to cooperate with the government. He testified that through his investigations and experience, he became familiar with how methamphetamine is packaged and sold, including prices and quantities. He testified that as a result of the approximately one hundred methamphetamine investigations in which he had participated, he knew what quantities of methamphetamine were for personal use and what quantities were dealer amounts. On the basis of this testimony, the district court allowed Agent Schmidt to testify that, in his opinion, an ounce or more of methamphetamine constituted a dealer quantity. Because Brumley was charged with possession with intent to distribute, possession of dealer quantities was probative as to Brumley's intent, and the government indeed sought to use this testimony to prove Brumley's intent to distribute.

The admission of expert testimony from technical fields is governed by the same concerns and criteria as the admission of scientific expert testimony. Walker v. Soo Line Railroad Co., 208

F.3d 581, 590 (7th Cir. 2000). See also Kumho Tire Co., Ltd. v. Carmichael, 119 S.Ct. 1167, 1174-76 (1999); Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 590 n.8 (1993). We review de novo "whether the district court properly followed the framework set forth in Daubert." Walker, 208 F.3d at 590 (citing United States v. Hall, 165 F.3d 1095, 1101 (7th Cir. 1999), cert. denied, 527 U.S. 1029 (1999)). If we determine that the district court properly applied the Daubert framework, we review the district court's decision to admit or exclude expert testimony only for an abuse of discretion. Walker, 208 F.3d at 590. The Supreme Court in Kumho Tire explained that the Daubert "gatekeeper" factors had to be adjusted to fit the facts of the particular case at issue, with the goal of testing the reliability of the expert opinion. 119 S. Ct. at 1175. For example, engineering testimony rests on scientific foundations, but "[i]n other cases, the relevant reliability concerns may focus upon personal knowledge or experience." Id. The reason for this needed flexibility is that there are many different kinds of experts and many different kinds of expertise, including experts in drug terminology, handwriting analysis, land valuation, agricultural practices, railroad procedures, and so forth. Id.

The district court applied this flexible approach by determining the extent and type of experience that Agent Schmidt had in the area of methamphetamine distribution. The court carefully limited both the questioning and the agent's testimony to reflect only those areas in which the agent had extensive experience and training, and in which the jury would be aided by his testimony. The district court therefore applied the Daubert gatekeeping tests for relevance and reliability and we will review the court's decision to admit this evidence for abuse of discretion only. Addressing Brumley's objections seriatim, the record reveals that the agent's testimony was based not on his subjective belief or unsupported speculation but rather on his extensive experience investigating methamphetamine distribution crimes. For example, the agent testified that in his experience, methamphetamine was sold on the streets of Indiana during the relevant time frame for $100 per gram, and that there are approximately 28 grams in an ounce. From his experience, the agent testified that an ounce or more of methamphetamine constituted a dealer quantity. As the district court pointed out, another expert might disagree with this opinion, but the disagreement does not render the opinion inadmissable. Rather, Brumley was entitled to cross-examine Agent Schmidt and to put on his own

expert to offer a counter opinion. That addresses Brumley's second objection as well, that Agent Schmidt's opinion was not based on any professionally sound or reliable underlying methodology. The opinion was based on his extensive investigative experience, and Kumho Tire explains that the reliability of different kinds of expertise may be shown in different ways.

Nor was the agent merely vouching for the credibility of Meade, one of Brumley's co-conspirators who testified that Brumley participated in the distribution ring. Meade testified that Brumley once participated in a two ounce sale of methamphetamine to a third party. It is difficult to understand how the agent's testimony that two ounces is a dealer quantity vouches for the credibility of Meade, and Brumley does not adequately explain the connection, if any exists. The agent's testimony merely tended to prove that if Brumley was in possession of two ounces of methamphetamine, he was in possession of a dealer quantity. Meade, on the other hand, testified that Brumley actually sold the two ounce quantity to another person. The agent's testimony was unrelated to Meade's credibility.

Finally, Brumley complains that the evidence was highly prejudicial and did not aid the jury. The government responds that the evidence was proper under Federal Rule of Evidence 704(b) because the agent did not explicitly refer to Brumley's mental state, and the agent made clear through his testimony that he did not possess special knowledge of the defendant's mental process, but rather was basing the opinion on his expert knowledge of criminal practices. Rule 704(b) provides that an expert witness testifying with respect to the mental state of a defendant in a criminal case may not state an opinion or inference as to whether the defendant did or did not have the mental state constituting an element of the crime charged because such ultimate issues are for the trier of fact alone. We addressed a very similar issue in United States v. Mancillas, 183 F.3d 682 (7th Cir. 1999), cert. denied, 120 S. Ct. 1271 (2000). At the trial in that case, the government presented a hypothetical to a testifying DEA agent, regarding a person possessing a plastic bag containing 400 grams of marijuana, a slip of paper bearing the notation "420 g," a handgun, a scale, two pagers, a cellular phone and $2440 in cash. After setting forth these hypothetical facts, the government asked the agent whether, in his opinion, the marijuana was being held for distribution or personal consumption. The agent testified that in his opinion, the marijuana was being held for distribution. 183 F.3d at 705. We held that such

testimony should not be excluded as long as it is made clear, either by the court expressly or by the nature of the examination, that the opinion is based on the expert's knowledge of common criminal practices and not on some special knowledge of the defendant's mental state. Id.

Brumley disavows Rule 704(b), stating that his objection is rather based on the fact that none of Agent Schmidt's experience or training was related to distinguishing user quantities from dealer quantities. However the argument is framed, the result is the same. The district court properly determined that Agent Schmidt had expertise in the matter of distinguishing user from dealer quantities, expertise gained through his extensive experience investigating crimes of this very nature. Brumley's argument goes not to the admissibility of this evidence but rather to its weight, and he was free to cross-examine the agent about the basis for his opinion. Through cross-examination and testimony from his own witness, Brumley was free to reveal any weaknesses or errors in the agent's opinion. Because the district court carried out the gatekeeper function appropriately and limited the evidence to those areas in which the agent had expertise gained through experience and training, we affirm the admission of Agent Schmidt's expert testimony.

C.

Brumley asserts two grounds for error in his sentence. First, he complains that the indictment did not specify whether he was being charged under 21 U.S.C. sec. 846, the drug conspiracy statute, or 18 U.S.C. sec. 371, the general conspiracy statute. The main difference in proof between these two statutes is that under sec. 371, the government must prove an overt act in furtherance of the conspiracy. The indictment, which did not specify which conspiracy statute applied, did allege overt acts in furtherance of the conspiracy. Because of this ambiguity in the indictment, Brumley contends that he should have been sentenced under sec. 371, which has a statutory maximum of 60 months. Section 846, on the other hand, has a minimum sentence of 120 months, and thus the difference is significant. Brumley also objects to the district court's refusal to entertain a downward departure in his sentence based on the disparity in sentencing between Brumley and his co-conspirators.

An error in the citation of the statute charged in an indictment is not a ground for reversal unless the error misled the defendant to the defendant's prejudice. Federal Rule of Criminal Procedure 7(c)(3). The district court noted that Brumley was not misled by the error because he

was informed at his initial hearing before a magistrate that he faced a possible sentence of ten years to life, and he also signed two documents at that time that indicated he was being charged under sec. 846. At trial, the government proposed instructions citing sec. 846 and Brumley did not object to these instructions. Indeed, the first time he brought the error to the court's attention was after trial. The district court therefore concluded that Brumley was not misled by the error. We agree. There was nothing in the record that would lead us to believe Brumley was misled about the charges he faced. Brumley complains that the ambiguity lies in the general verdict that the jury returned because the government alleged and proved overt acts in furtherance of the conspiracy, which is consistent with sec. 371. Because the elements of both sec. 371 and sec. 846 were satisfied, Brumley claims the court should be limited in sentencing him to the maximum penalty under sec. 371. As the district court noted, the jury was instructed that they need not find that Brumley committed any overt acts in order to convict him. There is thus no ambiguity as to which statute Brumley was charged with or convicted under, and any error or omission in the indictment was harmless.

We turn finally to Brumley's claim that the district court erred in determining that the disparity between Brumley's sentence and Bishop's sentence was not a valid basis to depart downward. Brumley maintains that there is an unjustified disparity between his sentence and Bishop's sentence, caused by the government's conduct at Bishop's sentencing hearing. At Bishop's detention hearing, the government urged the court to find that a gun found in Bishop's possession was a dangerous weapon related to drug dealing. After Bishop cooperated with the government, the government urged the court at his sentencing hearing to find that the gun was not related to the drug crime but was rather a family heirloom. As a result of that finding and other factors relating to Bishop's cooperation, Bishop received a reduced sentence of 63 months, considerably shorter than Brumley's 151 month sentence. At Brumley's sentencing hearing, the court found that the disparity was justified by a proper application of the guidelines and therefore the district court refused to depart downward.

We lack jurisdiction to review a district court's discretionary refusal to depart downward unless the sentence was imposed in violation of the law, or was imposed as the result of an incorrect application of the guidelines. United States v. Winters, 117 F.3d 346, 348 (7th Cir.

1997), cert. denied, 522 U.S. 1063 (1998). Brumley claims the district court made a legal error in concluding that it could not depart on the basis of a disparity in sentencing. But the district court was clearly aware that it could depart for an unjustified disparity, and found that the disparity here was justified by the factual circumstances of this particular case. Such a discretionary ruling is not reviewable by this Court. We note that the government cited our opinion in United States v. McMutuary, 176 F.3d 959 (7th Cir. 1999), without noting that we vacated that opinion several months before the government filed its brief. See United States v. McMutuary, 200 F.3d 499 (7th Cir. 1999). That oversight does not change the analysis. In our recently released revised opinion in McMutuary, we did not change the core holding of United States v. Meza, 127 F.3d 545 (7th Cir. 1996), cert. denied, 522 U.S. 1139 (1998), that a justified disparity can never serve as a basis for a departure from the Guidelines sentencing range. See United States v. McMutuary, 2000 WL 793990, *11 (7th Cir. June 21, 2000). We went even further to say that, ordinarily, disparities between the sentences of co-defendants should not be considered a factor in the decision to depart from the Guidelines. Id. Rather, we held, a sentencing court should consider unjustified disparities only in those cases where the disparity exists between the defendant's and all other similar sentences imposed nationwide. Id. That seals the case against Brumley, for his sentence is the result of a straight-forward application of the Guidelines. Even if he were able to show that a disparity exists between his sentence and Bishops's, he cannot, therefore, show that his sentence is disparate from the sentences of defendants similarly convicted throughout the United States.

AFFIRMED.