In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-1504

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

PEDRO J. BOSQUE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 00 CR 93—**David F. Hamilton**, *Judge.*

ARGUED SEPTEMBER 26, 2002—DECIDED DECEMBER 3, 2002

Before COFFEY, ROVNER and DIANE P. WOOD, *Circuit Judges.*

ROVNER, *Circuit Judge.* After the government put on its case at trial, Pedro Bosque pled guilty to an indictment charging him with one count of conspiracy to possess with intent to distribute methamphetamine, four counts of distribution of methamphetamine, and one count of possession with intent to distribute marijuana. Bosque raises two challenges to his sentence, claiming the district court erred when it failed to grant him a reduction in his sentence for acceptance of responsibility, and that the court erred when it refused to sentence him according to the terms of an agreement he believed he had

with the government. We affirm in part and dismiss for lack of jurisdiction in part.

## I.

Pedro Bosque ("Bosque") became a drug dealer under somewhat unusual circumstances. One day, several men came to his home and told him that his son, Pedro Bosque, II ("Pedro"), had stolen drugs and money from them at gunpoint. They told Bosque that they would kill Pedro if he did not repay them. Bosque agreed to repay the money for his son by selling drugs for the men in exchange for a promise that they would spare Pedro's life. Bosque then began selling methamphetamine for the men, turning over the proceeds of the sales to them. Pedro became even more indebted to the men, and Bosque returned home with his wife one day to find two men holding Pedro at gunpoint and again threatening to kill him. Bosque again agreed to sell drugs in exchange for his son's life, this time in greater quantities.

Local law enforcement officers became aware that Bosque was selling drugs and set up an undercover operation in order to catch him in the act. Detective Jerry Cannon of the Indianapolis Metropolitan Task Force managed the Bosque operation. He enlisted the aid of FBI Special Agent Jo Ann Burkhart, in part because federal law was implicated. On four occasions, an undercover agent for the Task Force purchased methamphetamine from Bosque in increasingly larger amounts, culminating in Bosque's arrest in early July 2000, when he sold three pounds of methamphetamine and one ounce of cocaine to the undercover officer. Bosque confessed and consented to a search of a storage shed where he kept his supply of drugs. Additional drugs and weapons were seized and Bosque was charged in a six-count indictment.

Because Bosque's wife had been with him shortly before the final controlled buy, Agent Burkhart questioned her on the day of Bosque's arrest and subsequently had additional conversations with her about her husband's case. Bosque's wife later testified that Agent Burkhart promised leniency for Bosque if he cooperated with law enforcement. Ms. Bosque also testified that Detective Cannon promised a sentence of one to three years in a state facility in exchange for Bosque's cooperation. When federal prosecutors later offered Bosque a plea agreement, his wife advised him to reject it because it did not meet the terms of the agreement she alleged she reached with Agent Burkhart and Detective Cannon.

Bosque went to trial, the government presented its case, and Bosque put on one witness in his defense case before changing course and pleading guilty. At the time he pled guilty, Bosque explained that his son had "a bad, bad, bad record" that led to Bosque's crimes:

> I'm saying this: I didn't have the opportunity or I didn't have the chance to call the police because I felt, not only fear for my wife, my kids, my grand kids, my whole family and the situation that I was put into—I did the best to my ability and if I had to—and I will go to jail for what I did. I take full responsibility for my actions and I will do it again for my son.

Tr. at 453. The court then explained that a guilty plea would result in Bosque losing the right to appeal his defense of duress or coercion. Bosque replied:

> Well, Your Honor, I know I did all these things, you know. I know I'm guilty. But, too, I had a reason to do—for what I do, you know. I'm not saying I'm not guilty.

Tr. at 454. The court accepted the plea. During the presentence investigation period, Bosque submitted an affidavit purporting to accept "total, full responsibility for

all of the charges that the U.S. Government filed against me and to which I plead guilty in open court." R. 81, Sentencing Tr. at 8.

The district court subsequently sentenced Bosque to 188 months imprisonment, five years of supervised release and a $600 special assessment. The court declined to reduce Bosque's sentence for acceptance of responsibility, in part because Bosque waited to see how the trial would go before pleading guilty. The court noted that Bosque's decision to go to trial

> is not consistent nor has his other conduct been consistent with what this Court views as an acceptance of moral responsibility for drug dealing on a wide and destructive scale by Mr. Bosque. In addition, frankly, it seems to me that Mr. Bosque is continuing to try to shift responsibility away from himself, to his son, to his son's associates, to law enforcement officials, and that is additional evidence that seems to me to be inconsistent with the acceptance of responsibility adjustment in this case. . . . I simply am not convinced that Mr. Bosque has accepted moral responsibility or expressed genuine remorse for his drug dealing. I do believe he's sorry he got caught, but that's not what we're talking about with acceptance of responsibility.

R. 82, Sentencing Tr. at 2-3. The court stated it would nonetheless consider Bosque's guilty plea in deciding on a point in the Guidelines range that is an appropriate sentence. The court then granted a two-level downward departure under U.S.S.G. § 5K2.12 for coercion and duress. R. 82, Sentencing Tr. at 24-25. The court found that although the coercion fell short of a complete defense to criminal conduct, it was sufficient to take the case outside the heartland of the Guidelines, especially given Bosque's lack of a criminal record before these inci-

dents. The court also rejected any claim by Bosque for a reduction for substantial government assistance. The court noted that nothing in the record demonstrated that Bosque had provided the level of assistance required for the court to make such an adjustment. Moreover, the court found that there was no contract or agreement between Bosque and the government for Bosque to receive a lenient sentence. Specifically, the court found that, although the law enforcement officers acted aggressively and properly in their efforts to obtain cooperation from Bosque, they never made promises they could not keep. R. 82, Sentencing Tr. at 25. Rather the court found there was simply a misunderstanding between Bosque, his wife and the law enforcement officers involved. *Id.* Bosque appeals.

## II.

The United States Sentencing Guidelines provide that "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by **2** levels." U.S.S.G. § 3E1.1(a). We review a district court's acceptance of responsibility determination for clear error. *United States v. Booker*, 248 F.3d 683, 690 (7th Cir. 2001); *United States v. Wetwattana*, 94 F.3d 280, 285 (7th Cir. 1996). The acceptance of responsibility determination is a factual finding, based in part on whether the defendant has accepted responsibility for his conduct in a moral sense. *Wetwattana*, 94 F.3d at 285; *Booker*, 248 F.3d at 690. *See also United States v. Cunningham*, 103 F.3d 596, 598 (7th Cir. 1996) (sentencing judge must look beyond formalistic expressions of culpability to determine whether the defendant has manifested acceptance of personal responsibility in a moral sense). We defer to the district court because it is in a much better position to assess the defendant's statements and de-

meanor. *Booker*, 248 F.3d at 690. Although the provision is designed in part to save the government the expense of going to trial, a timely guilty plea alone does not entitle a defendant to a reduction for acceptance of responsibility. U.S.S.G. §3E 1.1, Application Note 3; *United States v. Ewing*, 129 F.3d 430, 435 (7th Cir. 1997). At the same time, going to trial to preserve issues that do not relate to factual guilt does not automatically preclude application of the acceptance of responsibility reduction. *Cunningham*, 103 F.3d at 599.

Bosque argues that he was entitled to the reduction because he confessed immediately upon his arrest, responded positively to the government's solicitation for assistance, pled guilty in open court against the advice of counsel, filed a written acknowledgment during the pre-sentence process taking full responsibility for his crimes, and apologized to the court for his crimes even after the court denied the reduction. He believes the court misconstrued his desire to explain his actions as an attempt to shift guilt away from himself and onto other persons. Moreover, he maintains he went to trial only because the government refused to make good on its agreement for leniency, and therefore he should not be faulted for putting the government to the expense of trial.

We will address this last point first. Bosque could have gone to trial to preserve his defense of coercion, a purely legal issue, and not lost his opportunity to receive an acceptance of responsibility reduction. *Cunningham*, 103 F.3d at 599. He also could have challenged the government's refusal to hold to an agreement to recommend leniency without necessarily losing an opportunity for the reduction. But he did much more than that; he put the government to its burden of proof on his factual guilt, and did not plead guilty until he saw how the trial was going. Moreover, the court was aware of each and every factor

he now raises as a basis for his entitlement to the reduction, and it appears the district court simply did not believe that Bosque accepted moral responsibility for his actions. The district court specifically found that Bosque tried to shift responsibility for his crimes onto his son, his son's associates and law enforcement. The court was not convinced that Bosque's expression of remorse was genuine, but rather found that Bosque merely regretted getting caught. The court's findings reflect no error of either law or fact, and Bosque has not pointed out any reason to believe the court was confused about the nature of Bosque's explanation for his crimes. We therefore affirm the district court's determination that Bosque was not entitled to a reduction for acceptance of responsibility. *See Ewing*, 129 F.3d at 436 (a district court is entitled to find that a guilty plea is not evidence of acceptance of responsibility when a defendant contests the government's case until the last possible moment); *United States v. Wallace*, 280 F.3d 781, 786 (7th Cir. 2002), *cert. denied*, 122 S.Ct. 2641 (2002) (a district court is entitled to find that eleventh-hour tactic of pleading guilty after the court has denied a motion to suppress and has assembled a jury does not warrant acceptance of responsibility reduction); *United States v. Gibson*, 155 F.3d 844, 848 (7th Cir. 1998) (a district court is entitled to find that defendant failed to accept responsibility when she sought to shift blame to another).

Bosque also maintains that the court erred when it refused to honor the government's promise for leniency in exchange for cooperation. Bosque argues that Detective Cannon and Agent Burkhart acted as agents of the government and that their promises are therefore binding on the United States Attorney. He contends that he cooperated in the manner requested and was thus entitled to the reduced sentence he claims the law enforcement officers promised his wife. Although Bosque does not

specify what provision of the Guidelines apply to his argument, presumably he relies on Section 5K1.1. That provision allows the court to depart from the Guidelines upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed a crime. Bosque argues, in essence, that he provided substantial assistance and the government breached its agreement to move for a departure on the basis of that assistance. The district court found as a factual matter that there was no such agreement and that Bosque had not assisted the government in any significant way. The court thus declined to depart downward.

A district court lacks the authority to depart downward on the basis of substantial assistance absent a motion from the government. *United States v. Santoyo*, 146 F.3d 519, 523 (7th Cir. 1998), *cert. denied*, 525 U.S. 1167 (1999). Moreover, we may review the government's refusal to move for a departure based on substantial assistance only for unconstitutional motive. *Santoyo*, 146 F.3d at 523. Bosque concedes the government filed no such motion here, but does not argue that the government's refusal to file the motion was based on an unconstitutional motive. He argues simply that the court was obliged to honor the alleged oral agreement between his wife and Detective Cannon and Agent Burkhart. The court, however, rejected Bosque's contract claim after hearing Agent Burkhart testify at trial and after hearing Ms. Bosque and others testify at Bosque's sentencing hearing. In short, the court simply did not believe that Detective Cannon and Agent Burkhart had made the promises claimed by Bosque. This finding is supported by the plea colloquy, where Bosque replied in the negative when the court asked, "Has anybody made any promises to you about how you'll be treated if you do plead guilty, or about how anybody else will be treated?" Tr. at 455-56. Bosque pled guilty only after

the court then explained to him in painstaking detail the maximum potential sentence he faced because of his plea.

The court also noted that Bosque had not provided substantial assistance. The court was thus clearly aware of its ability to depart downward for substantial assistance but chose not to do so based on the facts of the case. If there is no legal error in the sentence, then we have no jurisdiction over the district court's decision not to depart downward. *United States v. Crucean*, 241 F.3d 895, 898 (7th Cir. 2001). *See also United States v. Johnson*, 227 F.3d 807, 816 (7th Cir. 2000), *cert. denied*, 532 U.S. 1024 (2001) (district court's decision to deny a downward departure is discretionary and not subject to the review of this court); *United States v. Brumley*, 217 F.3d 905, 913-14 (7th Cir. 2000) (this court lacks jurisdiction to review a district court's discretionary refusal to depart downward unless the sentence was imposed in violation of the law or as a result of an incorrect application of the guidelines). When the court is aware of its discretion to depart and refuses to do so based on the particular factual circumstances of the case, we may not review that discretionary ruling. *Brumley*, 217 F.3d at 914. Such was the case here and we therefore dismiss that part of Bosque's appeal that seeks review of the district court's refusal to depart downward for substantial assistance.

AFFIRMED IN PART, DISMISSED IN PART.

A true Copy:

　　　Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—12-3-02