**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Eddie ELLIS, III, Defendant–Appellant.**

No. 02–1015.

United States Court of Appeals,
Seventh Circuit.

Argued March 5, 2003.

Decided June 30, 2003.

Before MANION, DIANE P. WOOD, and EVANS, Circuit Judges.

## ORDER

Eddie Ellis was convicted of participation in a drug conspiracy and sentenced to 210 months in prison. He raises two issues on appeal. First, he challenges the district court's denial of his motion to suppress evidence, arguing that the traffic stop that led to his conviction was unsupported by either probable cause or reasonable suspicion. Second, he challenges the district court's refusal to grant him a downward departure at sentencing, arguing that the court failed to recognize its authority to depart on the basis of unjustified disparity among the sentences of codefendants. For the reasons given below, we affirm Ellis's conviction and sentence.

### I

The facts surrounding Ellis's arrest are relatively involved. The local police had received a tip from the FBI that a dark-colored duffel bag containing marijuana had been brought into a two-story residence at 1815 12th Avenue in Rockford, Illinois. The FBI had followed the bag to that location after conducting a controlled sale of marijuana earlier that morning and had enlisted the help of local authorities to recover the marijuana and perform whatever arrests might be necessary.

Once the surveillance arrangements were in place, a local police detective, Brian Skaggs, observed Ellis and two companions (Randy Kennedy and Christopher Lamon) drive up to the residence. Ellis was in a Dodge Intrepid, and the other two were in an Oldsmobile Intrigue. Skaggs watched as Kennedy and Lamon met a fourth man (Gilbert Frometa) and entered the building with him. Ellis stayed behind, got out of his car and looked around. A few minutes later, Kennedy and Lamon emerged from the building with Frometa. Kennedy was carrying a dark-colored duffel bag with red and green stripes, which he placed in the trunk of the Intrigue.

Handing a smaller duffel bag to Frometa, the original three then swapped cars: Kennedy drove away in the Intrepid with Lamon, while Ellis left in the Intrigue. Frometa departed in his own car a few minutes later.

A uniformed officer was directed to stop both the Intrepid and the Intrigue, which he did. Shortly thereafter, two other police officials, Deputy Chief Dominic Asparro and Captain Richard McMahon, arrived on the scene. Asparro helped the uniformed officer remove Kennedy and Lamon from their vehicle and handcuff them, while McMahon removed Ellis from his vehicle and asked him whether he had any drugs or weapons in the car. According to both McMahon and Asparro, Ellis told McMahon that the car was not his, and that he could "look around." The duffel bag was found in the trunk, containing not marijuana as expected, but four kilograms of cocaine. It was therefore a different duffel bag from the one the officers expected to find—the one that the FBI agents had seen being taken into the house. In fact, there appears to have been no relation (other than the location) between the two transactions that had taken place that morning.

Before his jury trial, Ellis moved to suppress the evidence resulting from that search. In his motion, he asserted that the police had neither probable cause nor reasonable suspicion to stop his vehicle, and that in any event he had not consented to the search of that vehicle. The district court held a hearing at which testimony was taken from Detective Skaggs, Deputy Chief Asparro, Captain McMahon, and two FBI agents. Although Ellis raised the probable cause and consent issues in his motion, he did not develop these arguments at the hearing, where the discussion was focused entirely on whether the police had reasonable suspicion.

The court concluded that the police had the necessary reasonable suspicion to justify the stop of Ellis's vehicle: the local police "were aware that there was a federal FBI investigation, a big drug sting taking place, and they were told that there would be drugs, marijuana, to be exact, in some dark duffle [sic] or gym bag at a certain house.... So we have the dark bags going into the house, and we have a dark bag coming out of the house that ends up in the vehicle being driven by the Defendant."

On appeal, Ellis argues that the stop of his vehicle was a full-blown arrest. He notes that by the time he was questioned about the contents of his vehicle, he had already been removed from the car and had seen his two colleagues placed in handcuffs. He also notes that the record is silent about the manner in which the stop was actually carried out. He insists that because the circumstances surrounding the search resembled an arrest more than an investigatory stop, the police were required to show not just reasonable suspicion but probable cause.

It appears, however, that Ellis has forfeited this argument by not developing it in the district court. Arguments not raised and developed in the district court are forfeited on appeal. See *United States v. Brumley*, 217 F.3d 905, 909–10 (7th Cir.2000). Although Ellis's motion to suppress raised the issue of probable cause, his argument at the hearing addressed only the question of reasonable suspicion, and the district court was never asked to decide whether the stop amounted to an arrest. Naturally, this also means that the government never had a chance to place evidence in the record that might have supported a probable cause finding. Ellis therefore forfeited any argument that the stop of his car amounted to an arrest, and we review it only for plain error. See *id.* at 909.

There is no bright line between an arrest and an investigatory stop, but among the relevant factors are the "officer's intent, impression conveyed, length of stop, questions asked, [and] search made." *United States v. Serna–Barreto*, 842 F.2d 965, 967 (7th Cir.1988). The intent of the Rockford police is not clear from the record, but the impression conveyed when Ellis saw his colleagues handcuffed was arguably that he too was being arrested. On the other hand, even an officer's approaching a suspect with gun drawn and pointed does not by itself turn an investigatory stop into an arrest. See *id.* at 967–68. Without more detailed information about the length of the stop, the questions initially asked, and the actual impression conveyed, we cannot conclude that the district court's analysis of the situation as an investigatory stop was plainly erroneous.

Ellis also argues that he did not voluntarily consent to the search of his vehicle after the stop. But although he raised this issue as well in his motion to suppress, he presented no evidence or argument at the hearing to counter the government's claim (backed by police testimony) that he did in fact consent. This argument therefore is likewise forfeited, and subject only to plain-error review. Because Ellis has identified no evidence that calls into question the voluntariness of his consent, he cannot prevail under that standard. See *United States v. Clarke*, 227 F.3d 874, 881 (7th Cir.2000) (no plain error where inadequate evidence was presented to rebut a finding of consent to a search).

Ellis is thus left with his argument that the police lacked reasonable suspicion. A determination of reasonable suspicion is based on the totality of the circumstances. *United States v. Sokolow*, 490 U.S. 1, 8, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). There must be some minimal level of objective justification, such that it rests on

more than a hunch. *Id.* at 7, 109 S.Ct. 1581. When law enforcement officers are in communication with one another, the knowledge of one can be imputed to the others. *United States v. Lenoir*, 318 F.3d 725, 728 (7th Cir.2003).

■ In this case, the combined knowledge of the federal and local law enforcement officers supported an objectively reasonable suspicion that Ellis and his colleagues had committed or were committing a crime. The cocaine-filled bag was removed from the building less than an hour after the marijuana-filled bag had reportedly been dropped off. Detective Skaggs testified that in his experience, the behavior of Ellis and his colleagues—looking around guardedly, exchanging duffel bags—indicated that a drug transaction was taking place. Everything seemed to comport with the information received from the FBI, with the possible exception of the red and green stripes on the duffel bag—details that were not included in the FBI's description of a "dark-colored" bag. But such a trivial discrepancy does not defeat reasonable suspicion. See *United States v. Price*, 184 F.3d 637, 641 (7th Cir.1999) (shortcomings in a tipster's description need not deprive police of reasonable suspicion).

The police therefore had a reasonable articulable suspicion that Ellis and his colleagues had committed or were committing a crime, which was sufficient to justify an investigatory stop of their vehicles. The fact that *ex post* it turned out that one of the elements supporting that suspicion (the apparent connection between the first duffel bag and the second) turned out not to be what it had seemed does not mean that *ex ante* the police could not rely on that element. The focus is always on what the police knew at the time they acted, not on what can ultimately be proved in a courtroom. The district court properly denied Ellis's motion to suppress.

## II

After a jury trial, Ellis was convicted of conspiracy to possess with intent to distribute and to distribute cocaine, cocaine base, and marijuana. The quantity of drugs involved in the conspiracy resulted in a base offense level of 38, which was reduced to 36 because of Ellis's minor participation. With a criminal history category of II, Ellis faced a guideline range of 210–262 months.

Ellis asked the court for a downward departure. He pointed out that one of the organizers of the conspiracy, Christopher Lamon, had received a sentence of only 180 months. Ellis also makes reference to the sentences received by his other co-defendants, Randy Kennedy (240 months) and Anthony Lamon (156 months). Both Kennedy and Anthony Lamon, like Christopher Lamon, pleaded guilty. But neither of their sentences could help Ellis establish any kind of untoward disparity, because Kennedy's sentence was longer than Ellis's, and Anthony Lamon's participation does not appear to have been any greater than Ellis's. In the discussion that follows, we therefore focus only on Christopher Lamon's sentence as a possible relevant point of reference for establishing a disparity. At the trial, Ellis's lawyer acknowledged to the court that "sentencing disparity is not a ... legal basis for departure," but he nevertheless argued that because of Ellis's minor role in the conspiracy, "[i]t would not be in the interest of justice ... to sentence Mr. Ellis to a sentence equivalent [to] or exceeding that of Mr. Lamon."

The district court declined to depart, saying that "the law tells me I can't deviate from [the prescribed] range unless there is a recognized exception." The court conceded the possible appearance of unfairness in the disparity between Ellis's sentence and the sentence received by La-

mon, but it observed that "[Lamon's] situation is different because he cooperated."

The court also expressed frustration with Ellis's failure to take responsibility for his actions and indicated that if Ellis had been more forthcoming, it might have been tempted to grant a downward departure even without a clearly established basis for doing so:

> It's hard for me to give—to be compassionate toward someone who's not doing his part in it. And ... the only way I can help you now would be to, in essence, violate the law by twisting it. And part of me wants to do that. And I suspect, had you stepped up here and said what I believe to be true, I'd be tempted to do that. So in a way I'm glad you didn't, because now I don't have to face that decision of twisting the law because I have empathy for a young man who's screwed up his life.

We have jurisdiction to review a denial of downward departure if it is based on an incorrect application of the guidelines—that is, if the district court mistakenly believed that it lacked authority to depart. See 28 U.S.C. § 3742(a)(2); *United States v. Brumley*, 217 F.3d 905, 913–14 (7th Cir.2000).[1] Ellis argues that such is the case here—that the disparity between Ellis's sentence and that of Christopher Lamon provided a basis for downward departure that the district court failed to recognize.

A district court may depart downward on the basis of "special factors" that were not contemplated by the Sentencing Commission in its formulation of the guidelines.

See *Koon v. United States*, 518 U.S. 81, 92–96, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). Disparity among co-defendants' sentences typically will not be considered a special factor, because such disparity usually results from nothing more than the application of the guidelines to the different circumstances of each defendant. See *United States v. Meza*, 127 F.3d 545, 549 (7th Cir.1997). A disparity resulting from something *other than* the application of the guidelines may nevertheless qualify as a special factor, but only if the sentence in question "is 'unjustified' in length in comparison to the sentences imposed on all other individuals appropriately sentenced under the Guidelines for similar criminal conduct." *United States v. McMutuary*, 217 F.3d 477, 490 (7th Cir.2000).

To his credit, Ellis has attempted to show that his sentence was not only unjustified relative to Lamon's, in light of Lamon's greater involvement in the drug conspiracy, but that it was also unjustifiably long relative to nationwide sentencing averages for similar crimes. He analyzes statistical information gathered from the U.S. Sentencing Commission's website (http://www.ussc.gov), using various methods to compare his sentence to sentencing averages for similar offenses. He also tries to draw support from a recent guideline amendment providing a maximum base offense level of 30 for a minor participant in a drug offense. See Amendment 640, U.S.S.G. Supp. to App. C, at 264 (2002) (amending U.S.S.G. § 2D1.1(a)(3)). Although this amendment was not given retroactive effect, Ellis argues that it nev-

---

1. The Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003, known as the PROTECT Act, Pub.L. No. 108–21, 117 Stat. 650 (April 30, 2003), makes some changes to the standards for appellate review of departures pursuant to 18 U.S.C. § 3742(e)(3). See PROTECT Act, § 401(d). Given the result we reach here, we have no need to decide whether or to what extent the changes contained in the new law apply to Ellis's case. Neither the grounds for departure nor the difference between *de novo* and deferential review of departures that are granted affect a case in which the district court declines to depart.

ertheless shows the unreasonableness of his sentence, given that every sentence imposed after the amendment for a similar offense will be considerably shorter than his own. Based on these observations, Ellis argues that his sentence can be considered "unjustified" under *McMutuary*, and that the district court may therefore have had authority to depart downward.

 The district court, however, never had occasion to consider this possibility. Not only could the court not have anticipated future guideline amendments, but none of the other potentially relevant data concerning nationwide sentencing statistics were presented to the court. Ellis's own attorney even told the court that "sentencing disparity is not a ... legal basis for departure"—a representation that may well have been a waiver of any sentencing-disparity argument, and at least amounted to a forfeiture of his present argument. See *United States v. Fudge*, 325 F.3d 910, 916 (7th Cir.2003) (finding waiver where counsel failed in the district court to seek departure on the basis of sentencing disparity). In any event, a perceived lack of authority was not the only reason the district court gave for refusing to depart: it equally emphasized Ellis's own refusal to accept responsibility. We therefore find no grounds for concluding that Ellis's sentence was based on an incorrect understanding of the court's discretionary authority to depart downward.

### III

The stop of Ellis's car was based on reasonable articulable suspicion, and the district court did not plainly err in failing to consider the stop as an arrest requiring probable cause. As for the court's refusal to depart downward, we find no reason to think that it was based on the court's failure to recognize a legitimate ground for departure, rather than its discretionary decision that Ellis had not earned the departure. Ellis's conviction and sentence are therefore

AFFIRMED.