In the

 United States Court of Appeals
 For the Seventh Circuit
 ____________________
No. 22-2000
UNITED STATES OF AMERICA,
 Plaintiﬀ-Appellee,
 v.

JOSE OREGON,
 Defendant-Appellant.
 ____________________

 Appeal from the United States District Court for the
 Northern District of Illinois, Western Division.
 No. 19-cr-50020 — Virginia M. Kendall, Judge.
 ____________________

 ARGUED DECEMBER 5, 2022 — DECIDED JANUARY 23, 2023
 ____________________

 Before BRENNAN, SCUDDER, and ST. EVE, Circuit Judges.
 ST. EVE, Circuit Judge. Jose Oregon owed the Internal Rev-
enue Service (“IRS”) approximately $60,000 in back taxes and
penalties but could not aﬀord to pay. To raise the money, Or-
egon agreed to launder $100,000, which he understood to be
the proceeds of illegal drug sales. What Oregon did not know,
however, was that the person for whom he was laundering
money was an undercover agent with the Federal Bureau of
Investigation (“FBI”). Oregon was subsequently indicted and
2 No. 22-2000

pled guilty to one count of money laundering. The district
court sentenced him to eighteen months in prison—six
months below the range calculated under the Sentencing
Guidelines.
 Oregon timely appealed contending that his sentence was
unreasonable because the district court failed to consider rel-
evant mitigating factors, and improperly relied on the need
for general deterrence and to avoid sentence disparities. We
aﬃrm.
 I. Background
 Oregon was married in 1997 and had two children from
that marriage. In 2011, Oregon and his wife divorced, and his
ex-wife retained custody over their children. After his di-
vorce, Oregon failed to ﬁle and pay taxes for three years.
When he ultimately ﬁled his late tax returns, he mistakenly
claimed his two children as dependents. Because of this mis-
take, Oregon owed the IRS approximately $60,000 in back
taxes and penalties.
A. The Oﬀense
 Looking for additional work to help earn money to pay
the IRS, Oregon visited some friends who owned a ranch.
While there, a ranch hand overheard Oregon asking for work.
The ranch hand oﬀered to introduce Oregon to a man who
needed help laundering his proceeds from illegal drug sales
and told Oregon that he could keep ten percent of everything
he laundered. Oregon agreed, not knowing that the man for
whom he would launder money was an undercover FBI
agent.
 Oregon later met with the agent, who gave him $100,000
to launder. After laundering over $85,000, Oregon had a
No. 22-2000 3

change of heart and stopped. Even after the agent tried to con-
vince him to continue, Oregon refused to launder any more
money.
 On March 19, 2019, Oregon was indicted on nine counts of
laundering money in violation of 18 U.S.C. § 1956(a)(3)(B). On
July 12, 2021, Oregon pled guilty to count one of the indict-
ment.
B. Sentencing
 At sentencing, the district court found that Oregon had an
oﬀense level of seventeen, a criminal history category of I, and
a corresponding Guidelines range of twenty-four to thirty
months. The government requested a sentence at the low end
of the range, and Oregon requested what is eﬀectively a non-
custodial sentence—a sentence of one day in prison, followed
by a period of supervised release.
 In assessing the factors under 18 U.S.C. § 3553(a), the dis-
trict court considered Oregon’s background and characteris-
tics and found that there was no need for speciﬁc deterrence
because Oregon was unlikely to recidivate. Understanding
that the conduct arose out of an undercover operation, the
court noted that “Oregon has no criminal history and has con-
tinuously been employed and promoted within his line of
work. Oregon also only laundered money on one occasion
and later denied additional requests to launder money.”
However, to “deter[] others from committing similar oﬀenses,
sanction[] Oregon for his conduct, and promote[] respect for
the law,” the court sentenced Oregon to eighteen months in
prison—six months below the low end of the Guidelines
range. The district court refused to impose a non-custodial
sentence because, in its opinion, that would result in “too far
4 No. 22-2000

of a disparity in sentencing people with this amount of money
laundering [and] would not be appropriate as far as sending
the message of promoting respect for the law.”
 On appeal, Oregon alleges that the district court imposed
an unreasonable sentence because it failed to aﬀord suﬃcient
weight to relevant mitigating factors, and instead improperly
focused on general deterrence and the need to avoid nonex-
istent sentence disparities.
 II. Analysis
 We review a district court’s sentencing decision in two
steps. “First, we assess de novo whether the court followed
proper procedures. If the decision below is procedurally
sound, then we ask whether the resulting sentence is substan-
tively reasonable. Whether the sentence imposed is inside or
outside the Guidelines range, we review the sentence for an
abuse of discretion.” United States v. De La Torre, 940 F.3d 938,
953 (7th Cir. 2019) (citations omitted). 1

 1 In his briefs, Oregon argues that the district court committed proce-

dural error by failing to consider several mitigating factors. “Failure to
consider the § 3553(a) factors or to adequately explain the choice of sen-
tence can amount to procedural error.” United States v. Warner, 792 F.3d
847, 856 (7th Cir. 2015) (citing Gall v. United States, 552 U.S. 38, 51 (2007)).
 Although he states that the court failed to consider these factors, Ore-
gon’s real argument is that the court “gave short shrift to those factors….”
A challenge to the district court’s weighing of sentencing factors is a sub-
stantive, not procedural, challenge. See Warner, 792 F.3d at 856 (alleging
the court did not “adequately address [defendant’s] arguments … goes to
the substance of [defendant’s] sentence.”). Indeed, when asked at oral ar-
gument if his argument was procedural or substantive, Oregon’s counsel
agreed that his argument is substantive. Thus, we evaluate only the sub-
stantive reasonableness of Oregon’s sentence.
No. 22-2000 5

 “[T]here is a nearly irrebuttable presumption that a below-
range sentence is reasonable.” United States v. Miller, 829 F.3d
519, 527 (7th Cir. 2016). “Indeed, we have never ‘deemed a
below-range sentence to be unreasonably high.’” United States
v. Gibson, 996 F.3d 451, 468 (7th Cir. 2021) (quoting United
States v. Brown, 932 F.3d 1011, 1019 (7th Cir. 2019)). To prevail
on appeal, Oregon must “show[] that the sentence does not
comport with the factors outlined in 18 U.S.C. § 3553(a).” De
La Torre, 940 F.3d at 953 (citations omitted). These factors in-
clude:
 the nature and circumstances of the oﬀense; the
 defendant’s history and characteristics; the
 need for the sentence to reﬂect the seriousness
 of the oﬀense, promote respect for the law, pro-
 vide just punishment, deter crime, [and] protect
 the public …; the need to avoid unwarranted
 sentencing disparities among similar defend-
 ants; and the need for victim restitution.
United States v. Daoud, 980 F.3d 581, 591 (7th Cir. 2020) (citing
§ 3553(a)). When evaluating whether the district court’s sen-
tence was reasonable, we recognize that “‘[t]he sentencing
judge is in a superior position to ﬁnd facts and judge their im-
port under § 3553(a) in the individual case,’ because ‘[t]he sen-
tencing judge has access to, and greater familiarity with, the
individual case and the individual defendant before him than
the Commission or the appeals court.’” United States v. Reyes-
Hernandez, 624 F.3d 405, 415 (7th Cir. 2010) (quoting Gall, 552
U.S. at 51–52). “In general, a disagreement about how much
weight to give each § 3553(a) factor does not warrant rever-
sal.” United States v. Warner, 792 F.3d 847, 856 (7th Cir. 2015)
(citations omitted).
6 No. 22-2000

 Oregon alleges several reasons why his sentence is unrea-
sonable and the district court should have imposed a lower
sentence: (1) there is no need for speciﬁc or general deter-
rence; (2) the court failed to consider that Oregon was unable
to provide substantial assistance under U.S.S.G. § 5K1.1; (3)
Oregon has several family members who depend on him for
support; (4) Oregon voluntarily paid restitution prior to sen-
tencing; and (5) the court improperly relied on the need to
avoid sentence disparities without any evidence that sentenc-
ing Oregon to a non-custodial sentence would create such dis-
parities among similarly situated defendants. We address
each of these issues in turn.
A. General and Speciﬁc Deterrence
 Oregon argues that there is no need for speciﬁc deterrence
because he is not likely to recidivate and poses no threat to the
public. But the district court expressly recognized this fact:
“Oregon demonstrates a very low risk of recidivism. At 44-
years old, Oregon has no criminal history and has continu-
ously been employed and promoted within his line of work.
Oregon also only laundered money on one occasion and later
denied additional requests to launder money.” The court fur-
ther understood that Oregon was looking for honest work, he
had never laundered money before, and that this oﬀense
arose from an undercover operation. 2 Indeed, Oregon’s back-
ground and characteristics are the primary reason the district
court imposed a below-Guidelines sentence.

 2 Oregon stops short of alleging misconduct by law enforcement, ac-

knowledging that “[i]t was not entrapment.”
No. 22-2000 7

 The court noted, however, that general deterrence re-
quires looking beyond the defendant to see how a sentence
would impact others considering committing the same of-
fense. The court then found that money laundering was a se-
rious oﬀense because it allows drug dealers to remain in busi-
ness, and determined that a custodial sentence was “appro-
priate under the money laundering laws in order to deter oth-
ers.”
 Oregon contends that a custodial sentence was unneces-
sary to promote general deterrence because “[t]he fact the
Government charged [Oregon] … should have been enough
to convince like-minded individuals not to engage in money
laundering activity.” Even if we believed that merely charg-
ing someone constituted adequate general deterrence (we do
not), “[i]t is not our job to reweigh the § 3553(a) factors.” De
La Torre, 940 F.3d at 954. The district court “was entitled to
make that judgment focusing primarily on the seriousness of
[Oregon’s] oﬀenses and the need for general deterrence in the
larger community.” United States v. Buncich, 20 F. 4th 1167,
1177 (7th Cir. 2021). In doing so, the court did not abuse its
discretion.
B. Substantial Assistance Under U.S.S.G. § 5K1.1
 Oregon next argues that the district court overlooked that
he was unable to obtain a downward departure for providing
substantial assistance to the government under U.S.S.G.
§ 5K1.1. Speciﬁcally, Oregon told the court that he “made ex-
tensive eﬀorts to cooperate,” but the FBI never used him be-
cause “he just had never engaged in any illegal conduct” so
there was nothing he could do to assist the FBI. While Ore-
gon’s eﬀorts did not amount to substantial assistance war-
ranting a motion by the government for a downward
8 No. 22-2000

departure, he did receive credit for acceptance of responsibil-
ity. See U.S.S.G. § 3E1.1 cmt. n.1(c). Moreover, Oregon bene-
ﬁted from his lack of a criminal history in other ways—e.g.,
he was placed at criminal history category I with a lower cor-
responding Guidelines range. Oregon is not entitled to an
even lower sentence for being unable to qualify for a down-
ward departure under § 5K1.1.
C. Need to Support Dependents
 Next, Oregon alleges that the district court ignored the im-
pact a custodial sentence would have on his family. In sup-
port, Oregon cites United States v. Johnson, 964 F.2d 124, 129
(2d Cir. 1992), where the Second Circuit upheld a downward
departure due to a defendant’s role in caring for her children:
“The rationale for a downward departure here is not that
Johnson’s family circumstances decrease her culpability, but
that we are reluctant to wreak extraordinary destruction on
dependents who rely solely on the defendant for their up-
bringing.”
 Oregon’s reliance on a pre-Booker decision from the Sec-
ond Circuit—which is not binding on us—is misplaced. Even
if it were applicable, Johnson only serves to further support
our deference to the district court’s determination here. See id.
at 131 (“[T]he district court departed to a sentence that it con-
sidered more appropriate given the anomalous nature of the
crime and the court’s concern for the defendant’s children and
grandchild. … [W]e are satisﬁed that the [court’s] departure
was reasonable.”). Being the sole caretaker of dependents
does not entitle a defendant to a non-custodial sentence.
 Similarly, Oregon’s reliance on United States v. Warner, 792
F.3d 847 (7th Cir. 2015), does not warrant a diﬀerent result. In
No. 22-2000 9

Warner, the district court weighed several “unique” factors
against the seriousness of the tax oﬀense and decided to im-
pose a non-custodial sentence. Id. at 854. On appeal, this Court
held that the court did not err in doing so. Id. at 863–64. We
did not hold, however, that the district court was required to
impose a non-custodial sentence due to those “unique” fac-
tors; we deferred to the district court’s decision. Thus, the rea-
soning underlying Warner supports our deference to the dis-
trict court’s decision here as well. See id. at 860 (“The district
court concluded that in Warner’s case a probationary sentence
met [the § 3553(a)] standard. That conclusion was reasona-
ble.”); id. at 858 (“Though we ourselves might have given
[Warner’s character] less weight compared to others, the court
did not abuse its discretion.”).
D. Restitution
 Oregon also argues that he should be “reward[ed]” for
“immediately oﬀer[ing] restitution because that is likely to
encourage other putative defendants to do the same.” Not so.
Courts can appropriately consider a defendant’s payment of
restitution when sentencing, id. at 859 (noting district court
appropriately considered defendant “promptly pay[ed] …
full restitution”), and the “voluntary payment of restitution
prior to adjudication of guilt” is relevant to whether the de-
fendant receives credit for accepting responsibility, U.S.S.G.
§ 3E1.1 cmt. n.1(c)—which Oregon received—but paying res-
titution does not require a lower sentence, see United States v.
Corner, 598 F.3d 411, 416 (7th Cir. 2010) (“No judge is required
to sentence at variance with a Guideline, but every judge is at
liberty to do so.” (emphasis in original)).
10 No. 22-2000

E. Avoiding Sentence Disparities
 Finally, Oregon alleges that the district court abused its
discretion when it relied on “the need to avoid unwarranted
sentence disparities among defendants with similar records
who have been found guilty of similar conduct,” 18 U.S.C.
§ 3553(a)(6), because there is no evidence that sentencing Or-
egon to a non-custodial sentence would result in disparate
sentences. Oregon’s argument fails because “a sentence below
the applicable Sentencing Guidelines range cannot be an un-
warranted disparity.” United States v. Gonzalez, 765 F.3d 732,
740 (7th Cir. 2014) (emphasis in original) (citing United States
v. Pape, 601 F.3d 743, 750 (7th Cir. 2010); United States v. Nania,
724 F.3d 824, 840 (7th Cir. 2013)).
 Oregon’s “brief discussion of statistics does not convince
us otherwise.” Nania, 724 F.3d at 841. Oregon cites data from
the Sentencing Commission indicating that twenty-ﬁve per-
cent of individuals sentenced under U.S.S.G. § 2S1.1 for
money laundering with the same oﬀense level and criminal
history category as Oregon—and who also did not receive
downward departures for assisting law enforcement—re-
ceived non-custodial sentences. Oregon argues that, in light
of this data, granting his request for a non-custodial sentence
would be consistent with these similarly situated individuals.
 A sentencing judge is free to “reject[] a guideline as lack-
ing a basis in data.” United States v. Aguilar-Huerta, 576 F.3d
365, 367–69 (7th Cir. 2009). But a judge is not required to con-
sult data, or conduct an empirical analysis, to conﬁrm that a
sentence is in fact consistent with similarly situated defend-
ants. “[T]he Sentencing Guidelines are themselves an anti-dis-
parity formula … [and] to base a sentence on a properly de-
termined Guidelines range is to give adequate consideration
No. 22-2000 11

to the relation between the defendant’s sentence and those of
other persons.” United States v. Blagojevich, 854 F.3d 918, 921
(7th Cir. 2017) (citing Gall, 552 U.S. at 38); see also United States
v. Brumley, 217 F.3d 905, 914 (7th Cir. 2000) (“[A] sentencing
court should consider unjustiﬁed disparities only in those
cases where the disparity exists between the defendant’s and
all other similar sentences imposed nationwide.”). Addition-
ally, the Guidelines seek only to prevent unwarranted sentence
disparities. See 18 U.S.C. § 3553(a)(6). By focusing strictly on
numbers, Oregon fails to account for unique factual diﬀer-
ences that may warrant a shorter sentence for one oﬀender
but not another. “The best way to curtail ‘unwarranted’ dis-
parities is to follow the Guidelines, which are designed to
treat similar oﬀenses and oﬀenders similarly.” United States v.
Sanchez, 989 F.3d 523, 541 (7th Cir. 2021) (citing United States
v. Bartlett, 567 F.3d 901, 908 (7th Cir. 2009)).
 Even were we to consider the data Oregon cites, it shows
that Oregon’s sentence is consistent with a vast majority of
similarly situated defendants. Seventy-ﬁve percent of simi-
larly situated oﬀenders received a custodial sentence, and the
average sentence for those oﬀenders was ﬁfteen months—
only three months shorter than the sentence the district court
imposed here. Further, the district court’s sentence was im-
posed to prevent disparities among defendants who laun-
dered the same amount of money as Oregon, but the statistics
Oregon cites fails to distinguish oﬀenders based on the
amount of money laundered. While sentencing Oregon to a
non-custodial sentence may not have been an anomaly, the
district court did not abuse its discretion by relying on the
Guidelines to prevent unwarranted sentence disparities.
12 No. 22-2000

 III. Conclusion
 In sum, although the factors Oregon identiﬁed may weigh
in favor of a lower sentence, these were not the only factors
relevant to the district court’s decision under § 3553(a). The
court found that money laundering is a serious oﬀense be-
cause it enables the illegal drug trade and imposed a sentence
that “deters others from committing similar oﬀenses, sanc-
tions Oregon for his conduct, and promotes respect for the
law.” The court balanced these considerations with Oregon’s
mitigating factors and imposed a sentence below the Guide-
lines range. The district court did not abuse its discretion.
 For the foregoing reasons, the district court’s sentence is
 AFFIRMED.