In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 23-1426

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

HERBERT HOLDER,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Southern District of Illinois.
No. 21-cr-40047-SMY-1 — **Staci M. Yandle**, *Judge.*

_____

ARGUED DECEMBER 7, 2023 — DECIDED MARCH 5, 2024

_____

Before WOOD, KIRSCH, and JACKSON-AKIWUMI, *Circuit Judges.*

WOOD, *Circuit Judge.* For several years, Herbert Holder made his living as a methamphetamine dealer in Williamson County, Illinois. Eventually, however, the government caught up with him, and he pleaded guilty to three charges stemming from those activities. The district court sentenced him to 240 months in prison, a term that was 22 months below the advisory range calculated under the U.S. Sentencing

Guidelines. On appeal, Holder challenges only his sentence, which he says is tainted by both procedural and substantive error. The alleged procedural flaw lay in the court's failure to consider one of his arguments; the substantive problem was its failure to attach sufficient weight to his mitigation arguments. We find no reversible error in either of these respects, and so we affirm.

**I**

Law enforcement officers launched an investigation into Holder's drug-trafficking activities in March 2021, after learning from a confidential informant that Holder was his methamphetamine dealer. During the next month, undercover agents purchased 3.5-gram batches of methamphetamine from Holder on three separate occasions. The officers next obtained a warrant to search Holder's home. That search uncovered 186 grams of methamphetamine hidden in various safes and compartments, a loaded Ruger LC9S 9mm semi-automatic handgun, and a large amount of ammunition. Holder previously had been convicted of multiple felonies.

The government indicted Holder on three counts: distributing methamphetamine, 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), possessing with intent to distribute methamphetamine, 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1). Holder pleaded guilty to everything. The presentence report ("PSR") calculated a base offense level of 32, relying on the conservative estimate that Holder's drug-trafficking activities between 2019 and 2021 involved 196.9 grams of actual methamphetamine and 739 grams of a mixture and substance containing methamphetamine, see U.S.S.G. § 2D1.1(c)(4). The PSR also classified Holder as a career offender pursuant to U.S.S.G. § 4B1.1,

based on his prior Illinois felony convictions for unlawful delivery of cannabis in 2002, for unlawful possession of methamphetamine in 2003, and for possession with intent to deliver cannabis in 2009. After accounting for Holder's career offender enhancement, see *id.*, an enhancement for possessing a firearm, see U.S.S.G. § 2D1.1(b)(1), and reductions for his timely plea and acceptance of responsibility, see U.S.S.G. §§ 3E1.1(a) and (b), Holder's total offense level was 34. Combined with a criminal-history category of VI, he wound up with a recommended guidelines range of 262 to 327 months' imprisonment.

In his pre-sentence filings, Holder urged that several facts warranted a downward variance. He explained that although he had been sober for a substantial period, he relapsed after his mother passed away in 2018. This was important, he said, because his drug addiction impaired his decision-making ability. He also cited the education credits he earned while he was in prison and his positive employment history during his time outside of prison. Finally, Holder noted that his most recent conviction was in 2009, that he had matured over the intervening 12 years, and that his risk of recidivism as a 48-year-old was lower than that of younger offenders.

At the sentencing hearing, the district court adopted the PSR's findings. Both parties recommended a downward variance from the recommended sentencing range: the government proposed a 180-month sentence, while Holder requested 120 months. During the hearing, Holder informed the court that two weeks before sentencing, a group of inmates had assaulted him while he was in jail, causing him to suffer bruises and a concussion. He asked the court to consider the assault as a mitigating factor. Holder initially argued that the

assault showed the "nature of … being in jail" and the "dangers that defendants have to deal with" in prison, "especially as [the prisoner] gets older." But when the court asked how the assault was relevant to the factors under 18 U.S.C. § 3553(a), Holder articulated a different argument:

> I think that's relevant to the nature and circumstances of, of the defendant, individual characteristics, and … you know, some people would think, well, he got a beat down while he was in jail so … that's some punishment that he got[.]

The court expressed sympathy for Holder but explained that it was "not connecting the dots" between his assault and the § 3553(a) factors (*i.e.*, nature and circumstances of the offense; history and characteristics of the defendant; and the need for the sentence to reflect a number of points, including seriousness of the offense, respect for the law, just punishment, deterrence, protection of the public, and provision of needed resources for the defendant). In response, Holder doubled down on his argument that the assault was a form of "punishment" that he had suffered for his offenses. The court still did not see the connection between the assault and the § 3553(a) factors, and so it attempted to identify for itself to what, if anything, the assault was relevant. Although the judge initially stated that the assault was "not a basis for a variance," just a moment later she said, "well, I guess [the assault is] part of his history" under § 3553(a). Holder agreed, though he also continued to maintain that the assault was "punishment" for which he should "get credit."

After Holder concluded his arguments, the court explained the factors it took into account in determining his sentence. It cited the seriousness of Holder's latest offenses, the

significant quantities of drugs involved in Holder's two-year methamphetamine-trafficking operation, and Holder's prior convictions for drug-trafficking-related offenses. The court noted that Holder continued his illicit activities even after he had learned that law enforcement was on to him in July 2020, when officers who were investigating an unrelated incident found evidence of drug-trafficking activity in Holder's residence. At the same time, the court recognized that certain facts counseled in favor of a below-guidelines sentence, including Holder's addiction, the loss of his mother, and the fact that his prior offenses had occurred years earlier. The court also acknowledged Holder's assault in jail once more, though it said it still was "not connecting the dots" between the assault and the § 3553(a) factors.

When all was said and done, the court determined that a downward adjustment was warranted, but not to the extent proposed by either party. It settled on a sentence of 240 months' imprisonment on counts one and two and 120 months' imprisonment on count three, all to run concurrently, followed by five years of supervised release. Holder's primary arguments on appeal are that this sentence was flawed both procedurally and substantively. He also contends that his Illinois marijuana-trafficking convictions cannot serve as predicate offenses for his career offender enhancement under U.S.S.G. § 4B1.1, but we have squarely rejected that argument, see *United States v. Ruth*, 966 F.3d 642, 651–55 (7th Cir. 2020). Holder is seeking only to preserve this point for possible Supreme Court attention. To the extent he might also be asking us to revisit our own law, we decline to do so.

**II**

We begin with Holder's procedural challenge, which we review *de novo*. *United States v. Miedzianowski*, 60 F.4th 1051, 1056 (7th Cir. 2023). At sentencing, "a district court must consider a defendant's principal, nonfrivolous arguments for lenience." *United States v. Martin*, 718 F.3d 684, 687 (7th Cir. 2013). Holder argues that he made such an argument when he pointed out the fact that he was assaulted in jail two weeks before sentencing; he contends that the district court erred by brushing this point aside.

But that is not what the court did. This is not a case where the district court "passe[d] over a colorable argument in silence." *Id*. To the contrary, the court thoroughly addressed the assault. It expressed sympathy for the injuries Holder sustained, engaged in a back-and-forth exchange with Holder about the assault, and even acknowledged the assault as one of Holder's mitigation arguments when it explained its sentencing decision.

That was not enough, in Holder's view, because he reads the record as indicating that the district court failed to recognize that it had the authority to consider the assault as a mitigating factor. "When a district court does not consider an argument because it is unaware of its authority to do so, a remand is warranted." *United States v. Sandoval-Velazco*, 736 F.3d 1104, 1109 (7th Cir. 2013) (citing *United States v. Taylor*, 520 F.3d 746, 748 (7th Cir. 2008)). Holder interprets the district court's repeated statements that it was not "connecting the dots" between the assault and § 3553(a), combined with its remark that the assault was "not a basis for a variance," as an assertion that it did not know that it could consider the assault.

The problem is that Holder is reading these statements in isolation, but the sentencing transcript as a whole tells a different story. The court went the extra mile and tried to imagine what proper argument Holder might have been making. Immediately after the court opined that the assault was "not a basis for a variance," it self-corrected, concluding that Holder's best argument for why the assault was relevant was that it shed light on his history, see 18 U.S.C. § 3553(a)(1). This dispels any possibility that the court was unaware of its authority to take the assault into account when it sentenced Holder.

Holder is also dissatisfied with the district court's refusal to consider two other arguments that he stressed: that the assault was a form of "punishment" for his offenses and thus somehow justified a discount on his formal sentence, and that the assault showed how dangerous prison life can be. But the court did not err in its treatment of those arguments. Holder's principal contention—that the assault was itself a form of "punishment" for his offenses—plainly lacks merit. And his argument that the assault shows the dangers that defendants face in prison makes only a generic point, "rather than one tailored to [Holder's] unique characteristics and circumstances." *United States v. Schmitz*, 717 F.3d 536, 542 (7th Cir. 2013) (finding that a district court need not even "explicitly address" this type of generic argument). To be sure, Holder noted in passing that prison is especially dangerous "as [a prisoner] gets older." But Holder did not explain how his age might have rendered him unusually susceptible to abuse in prison, compared to any other defendant facing incarceration. Nor did Holder raise any other fact specific to himself that might have expanded on this line of argument. Instead,

Holder circled back to his theory that the assault was "punishment" for his offenses.

Judges need not credit underdeveloped or meritless arguments. The court here did its best to understand Holder's point. It said more than enough to satisfy us that it understood that it could take the assault into account as part of Holder's history under § 3553(a). The court therefore did not commit procedural error.

### III

Our review of the substantive reasonableness of a sentencing decision is only for abuse of discretion. *United States v. Moore*, 851 F.3d 666, 674 (7th Cir. 2017). A sentence is substantively reasonable if the district court "gives meaningful consideration to the § 3553(a) factors and arrives at a sentence that is objectively reasonable in light of the statutory factors and the individual circumstances of the case." *United States v. Patel*, 921 F.3d 663, 672 (7th Cir. 2019) (cleaned up). There is a "nearly irrebuttable presumption" that a below-guidelines sentence is reasonable. *United States v. Oregon*, 58 F.4th 298, 302 (7th Cir. 2023) (quoting *United States v. Miller*, 829 F.3d 519, 527 (7th Cir. 2016)). Holder can overcome this presumption "only by showing that the sentence does not comport with the [§ 3553(a) factors]." *United States v. Solomon*, 892 F.3d 273, 278 (7th Cir. 2018).

Holder has not met this burden. The court acknowledged Holder's principal mitigation arguments, including his drug addiction, the loss of his mother, the time that had elapsed since his prior convictions, and his assault while in jail. But it found these factors outweighed by the aggravating aspects of his record, including the seriousness of the offenses and his

criminal history. The court stressed the dangerousness of distributing a "serious drug" like methamphetamine and of possessing firearms; the fact that Holder had been "knee deep" in trafficking methamphetamine for nearly two years in a small community; the significant quantities of drugs found in Holder's residence, which went "far beyond a need to support" his addiction; the fact that Holder's prior drug-trafficking-related convictions were "consistent" with his latest offenses; and the fact that Holder had continued his methamphetamine-trafficking activities even though he knew that law enforcement knew about his drug dealings.

After balancing these factors, the court reasonably determined that they warranted a sentence reduction, though not as much as Holder hoped for. Although Holder might wish that the court had weighed the competing factors differently, "[s]uch a thorough review of the relevant information is simply not an abuse of discretion." *United States v. Clay*, 50 F.4th 608, 613–14 (7th Cir. 2022).

## IV

We AFFIRM the judgment of the district court.